(No. 32991.—

EDWARD BONNIER, Appellant, *vs.* CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellee.

*Opinion filed March 17, 1954—Rehearing denied May 19, 1954.*

James A. Dooley, of Chicago, for appellant.

J. L. Rice, Charles F. White, C. W. Krohl, Theodore G. Schuster, J. R. Wolfe, and Andrew C. Scott, all of Chicago, for appellee.

Mr. Justice Daily delivered the opinion of the court:

This appeal involves an action brought in the superior court of Cook County by Edward Bonnier, plaintiff-appellant, against his employer, the Chicago, Burlington & Quincy Railroad Company, under the Federal Employers' Liability Act (45 U.S.C. 51) for injuries incurred by plaintiff during the course of a switching operation in defendant's yard at Morton Park, Illinois, and allegedly caused by the negligence of defendant. A trial resulted in a verdict for plaintiff for $188,333.33; however, the court allowed defendant's motion for a new trial after denying a motion for judgment notwithstanding the verdict. A second trial resulted in a verdict for the sum of $70,000 and, on this occasion, defendant's motion for judgment notwithstanding the verdict was denied and judgment was entered on the verdict. On appeal, the Appellate Court for the First District reversed the judgment in favor of the plaintiff and directed judgment for defendant notwithstanding the verdict of the jury. (*Bonnier* v. *Chicago, Burlington and Quincy Railroad Co.* 351 Ill. App. 34, 113 N.E. 2d 615.) This court has granted plaintiff's petition for leave to appeal in order to further review the cause.

The well-established rule in both the Federal courts and the courts of Illinois is that a motion for judgment notwithstanding the verdict presents *only a question of law*

as to whether, when all the evidence is considered, together with all reasonable inferences therefrom in its aspect most favorable to the plaintiff, there is a total failure or lack of evidence to prove any necessary element of plaintiff's case. (*Wilkerson* v. *McCarthy*, 336 U.S. 53, 93 L. ed. 497; *Lindroth* v. *Walgreen Co.*, 407 Ill. 121; Ill. Rev. Stat. 1951, chap. 110, par. 259.22.) Section 1 of the Federal Employers' Liability Act makes a carrier liable in damages for any injury or death "resulting in whole or in part from the negligence" of any of its "officers, agents, or employees." Other provisions of the act abolish the defense of assumption of risk and provide that contributory negligence of a plaintiff shall not bar a recovery. (45 U.S.C. 51, 53, and 54.) Thus, the sole question presented on appellate review is whether there is any evidence, considered in the light most favorable to the plaintiff, that defendant was guilty of negligence which contributed in whole or in part to plaintiff's injury.

The evidence of the accident, viewed in a light most favorable to plaintiff, was as follows: At the time of the occurrence, plaintiff was 48 years old and had been continuously employed by defendant as a railroad blacksmith for 19 years. Plaintiff did most of his work at a blacksmith forge located in a blacksmith shop near tracks 4 and 5 in what is known as the repair or "Y" yard. His duties involved the forging of parts for freight cars, such as pin lifters, stirrups, grab irons, brake levers, etc., in the blacksmith shop. Sometimes he went out into what are called the "Y" and "Z" yards to assist in making repairs to cars loaded with perishable freight, emergency war material, and the like, known as "hot" cars. Although the evidence was conflicting, there was testimony that plaintiff frequently went into "Z" yard to obtain materials when the storeroom did not have the kind of steel he needed for repairs and that he had been told to do this by his superiors. On Sundays plaintiff occasionally worked

as a repairman, oiler, car inspector, or in whatever other capacity he might be most useful.

On Friday, July 30, 1948, plaintiff ate his lunch in the blacksmith shop then left, intending to look over the bad order tracks to see if there was anything for him to do. Accordingly he went to track 15-Z, 100 to 150 feet from the blacksmith shop, where cars were stored pending their removal to repair tracks. In many instances plaintiff was required to make parts to effect the needed repairs. On the day in question the car nearest plaintiff was a gondola car which was involved in his accident. About five to ten feet west of the gondola was a boxcar, and to the east, at a distance of twenty to forty feet, was a standing locomotive. Having ascertained from the card on the side of the gondola that it had a defective sill step, plaintiff made a pattern for the sill step using paper, ruler and pencil. He then noted from material hanging over the side of the car that it contained scrap metal, and saw one piece of quarter-inch, 12″ x 16″ flat plate which he wanted to use for work in his shop in making a cart or an air-brake drum. He climbed up on the west end of the car to get this piece of metal, and as he was standing on top of the car facing in an easterly direction, five railroad cars were pushed in on track 15 from the west against nine standing cars, this cut of 14 cars moved about 240 feet striking 14 standing cars with enough force so that the cut of 28 cars continued east, striking the boxcar and then the gondola car, causing plaintiff to be thrown to the ground and injured.

The record contains testimony tending to show that (1) this coupling operation was made with unusual force; (2) that it was done in violation of a custom not to shunt detached cars into standing cars when there was an engine within 20 to 40 feet of the standing cars; (3) that defendant could have taken additional safety measures in conducting such coupling operations, such as having a "rider" on the cars to apply the hand brakes, and (4) that

defendant's locomotive which pushed the cars into the gondola started from a standing position without ringing a bell or giving warning in any other way, in violation of a company rule. All of such evidence raises the factual issue of whether defendant exercised due care in the switching of cars in a yard where men were at work.

Considering the record as a whole, we cannot say, as a matter of law, that the evidence fails to establish a reasonable basis from which the jury could arrive at the conclusion that defendant was guilty of negligence which contributed, in whole or in part, to plaintiff's injury. Cases dealing with the extent to which questions arising under the Federal Employers' Liability Act should be left to the jury are numerous and, it must be admitted, not always consistent on the surface. In this instance, however, we are impelled, by recent decisions of Federal courts construing the act, to hold that there was sufficient evidence presented to support the jury's verdict for the plaintiff and that it was error for the Appellate Court to take from the jury the function of resolving that evidence. The prevailing view of those courts, by which we are bound in the interpretation of this Federal remedy, is most aptly summarized in the case of *Louisville and Nashville Railroad Co. v. Botts*, 173 Fed 2d 164, at pp. 166 and 167, as follows:

"In this connection, heed necessarily must be given to the unmistakable teaching of the Supreme Court in its recent decisions, that trial and appellate courts, both federal and state, on questions of liability under the Federal Employers' Liability Act, have been taking too narrow a view generally of the scope of permissive inference which is open to a jury on 'probative facts.' As one of the Justices has expressed it, in indicating the purpose of that Court's repeated overturning of decisions in such cases during the past few years (approximately 20 since 1943), 'The historic role of the jury in performing that function * * * is being restored in this important class of cases.' See con-

curring opinion of Mr. Justice Douglas in *Wilkerson* v. *McCarthy,* 69 S. Ct. 413, 422.

"The opinions of the Supreme Court have declared that it is 'the clear Congressional intent that, to the maximum extent proper, questions in actions arising under the Act should be left to the jury,' Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, 63 S. Ct. 444, 451, footnote 30, 87 L. Ed. 610, 143 A.L.R. 967; that such cases may not be taken from the jury merely because the question of liability is 'close or doubtful,' Bailey v. Central Vermont Ry., 319 U.S. 350, 354, 63 S. Ct. 1062, 1064, 87 L. Ed. 1444; that the jury has the right to make 'all reasonably possible inferences' from such probative facts in the evidence as it chooses to accept, and 'It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences,' Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 32-35, 64 S. Ct. 409, 411, 412, 88 L. Ed. 520; that in any choice between possible inference 'a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference,' but 'Only when there is a complete absence of probative facts to support the conclusion reached does reversible error appear,' Lavender v. Kurn, 327 U.S. 645, 653, 66 S. Ct. 740, 744, 90 L. Ed. 916; and that the assumption that, on an issue of liability, 'juries will invariably decide * * * against railroads' is 'contrary to fact,' and courts may not act on the theory that 'juries will fall short of a fair performance of their constitutional function,' but they must assume that a jury 'finds facts only because they are proved,' Wilkerson v. McCarthy, 69 S. Ct. 413, 417, 418."

In reversing the judgment of the trial court in this case, the Appellate Court placed great stress on evidence of the plaintiff's conduct at the time of his injury. (See

351 Ill. App. 34, 113 N.E. 2d 615.) Considering such conduct, it is obvious that the fact that plaintiff was acting in violation of certain of defendant's rules; that plaintiff knowingly went on a "live" track; that he had stated when executing a company form that he understood he could not rely upon signals being given but must watch for himself; and that plaintiff assumed a position of danger without posting a "blue flag" or otherwise giving notice to the switching crew, were all matters which only went to the question of contributory negligence. Under the act upon which this case is based, contributory negligence is not a defense but is considered by the jury only in assessing damages. It should not be used to bar plaintiff's recovery under the guise of non-negligence. *Tiller* v. *Atlantic Coast Line R. Co.,* 318 U.S. 54, 87 L. ed. 610.

Likewise, it is our opinion that the Appellate Court improperly considered the question of plaintiff's alleged illegal conduct in taking and carrying away a chattel moving in interstate commerce. Violation of the law by the injured party at the time of the accident is usually evidence of negligence, but there remains a question of fact whether the illegal act is the proximate cause of the injury. In dealing with this problem, this court said in *Lerette* v. *Director General of Railroads,* 306 Ill. 348, (pp. 352-3): "The mere fact that plaintiff was violating a law at the time he was injured ought not to bar his right to recover any more than the fact that defendant was violating a law at the time plaintiff was injured ought to conclusively establish plaintiff's right to recover. Where the defense is that plaintiff's unlawful conduct at the time of the accident was the proximate cause of the accident, the difficult question presented for determination is whether the unlawful conduct was a direct and proximate cause contributing, with others, to the injury or whether it was a mere condition of it. The mere fact that plaintiff was violating the law at the time he was injured will not bar his

right to recover unless the unlawful act in some way proximately contributed to the accident in which he was injured. (*Star Brewery Co.* v. *Hauck,* 222 Ill. 348; *Graham* v. *Hagmann,* 270 id. 252; *Ensley Mercantile Co.* v. *Otwell,* 142 Ala. 575, 4 Ann. Cas. 512; *Munroe* v. *Hartford Street Railway Co.* 76 Conn. 201, 56 Atl. 498.) In determining whether the unlawful conduct of plaintiff will bar his right to recover there must be kept in mind the distinction between that which directly and proximately produces or helps to produce the result as an efficient cause and that which is a necessary condition or attendant circumstance of it. If the illegal act is a mere condition which made it possible for the accident to occur but is in itself no part of the accident it will not bar recovery. It is, of course, an essential condition of most accidents that the injured party be where he was at the time he was in order for the injury to occur, and the fact that he would not have been there if he had not been violating the law is not, in itself, a defense. (*Newcomb* v. *Boston Protective Department,* 146 Mass. 596, 16 N.E. 555; *Berry* v. *Sugar Notch Borough,* 191 Pa. St. 345, 43 Atl. 240; *Tackett* v. *Taylor County,* 123 Iowa, 149, 98 N.W. 730.)" (See, also, *Streeter* v. *Humrichouse,* 357 Ill. 234.) Thus, even assuming in the present case that plaintiff's act of taking a piece of scrap metal from an interstate shipment was an illegal act, there still remains the question of fact whether such act was the proximate cause for plaintiff's injury.

In *Tennant* v. *Peoria & Pekin Union Railway Co.* 321 U.S. 29, 88 L. ed. 520, the following universal rule is expressed: "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the

fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." As previously indicated, it is our opinion in this case that whether defendant was guilty of negligence which proximately caused plaintiff's injury, in whole or in part, was a question of fact to be decided by the jury. Not one, but two, juries have decided this question in favor of the plaintiff and, having determined that there is satisfactory evidence upon which the jurors could base their conclusion, we may not now substitute our judgment for theirs.

Accordingly, the judgment of the Appellate Court for the First District is reversed, and the judgment of the superior court of Cook County is affirmed.

*Appellate Court reversed; superior court affirmed.*