**ATCHISON, T. & S. F. RY. CO.**
v.
**STUDER.**
No. 13636.

United States Court of Appeals,
Ninth Circuit.
May 21, 1954.

Robert D. Huber, San Francisco, Cal., Robert W. Walker, Los Angeles, Cal., Gus L. Baraty, Peart, Baraty & Hassard, San Francisco, Cal., for appellant.

Thomas C. Ryan and Daniel V. Ryan (of Ryan & Ryan), San Francisco, Cal., for appellee.

Before HEALY, ORR and LEMMON, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal by the Santa Fe Railway Company from a verdict and judgment in damages entered against it in a suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Appellee, a brakeman in appellant's employ, suffered injury to his back while unloading a bundle of galvanized iron pipe from a refrigerator car, otherwise known as a reefer. This car was built for the purpose of carrying ice and perishables, but at the time in question was used for the carriage of miscellaneous freight. There were ice tank bulkheads across both ends of the car, extending 3 feet inwardly at either end. The inside length of the reefer between these bulkheads was 33 feet and 1¾ inches. The inside width was 8 feet 10 inches. At the center of the car were double doors through which freight was loaded and unloaded, these having a width of 5 feet. On being opened the doors folded back along the outer surface of the car and at the hinge side they extended some inches into the doorway space, thus offering a further possible impediment to the removal of lengthy freight. The pipe in question was ¾ inch pipe 21 feet in length. There were 7 lengths of pipe in the bundle, fastened together with wires at either end, the bundle weight being approximately 167 pounds. While lying flat on the floor of the reefer with the rear end at the bulkhead, the front end of the pipe extended some distance beyond the farther side of the doorway.

The work of unloading freight was done by appellee and one Scott, a senior or head brakeman, the first order of business apparently being the removal of the pipe. Appellee took up the forward end of the bundle at the doorway while Scott took the rear end, carrying it to the opposite rear corner of the car for the purpose of "shortening" the overlap beyond the doorway. In order to get his end of the bundle through the door appellee was obliged to raise it to a position well above his head, while Scott held the rear end close to the floor. In the exertion of twisting and maneuvering to accomplish his task appellee suffered the hurt to his back.

The theory of the suit is that the carrier was negligent in causing heavy pipe of such length to be placed in a car of the character and dimensions of the reefer, rather than in a flat car, or a gondola, or a box car; and that appellee sustained his injury in consequence thereof.

Appellant calls attention to admissions of appellee and of Scott to the effect that there was "nothing wrong" with the inside of the car—no slush, mud, or slippery substance on the floor or any shortcoming of that sort, hence, it is said, there was admittedly no failure on appellant's part to furnish appellee with a safe place to work. Of course, the

reefer was not per se unsafe. Whether unsafe or no was a matter dependent on the nature of the freight carried. Cf. Blair v. Baltimore & Ohio Railroad Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490. The car afforded no hazard to the loading or unloading of package or other freight which could without substantial difficulty be put through the doors. But the jury might reasonably find that it was neither suitable nor safe for the handling of the lengthy bundle of heavy pipe appellee was obliged to wrestle with in the manner heretofore indicated.

It appears to be conceded that the bulkheads at the ends of the reefer were removable, so that it would have been feasible for appellant, by removing them, to have extended the length of the car a total of 6 feet, thus obviating the difficulties described above. But appellant counters by saying that it was possible to shove the rear end of the bundle of pipe into the space between the bulkhead and the floor of the car, hence that the mere presence of the bulkheads should have caused no difficulty. However, the bundle of pipe was itself 4 inches in diameter, and there was evidence from which it could have been found that the space between bulkhead and floor was not greater than that. Moreover the witness Scott, an experienced hand, testified that the safest way to unload the pipe was the manner in which the unloading was actually effected. We may add that on appellant's motion the jury were given the advantage of inspecting a similar refrigerator car at the carrier's San Francisco yards, at which time the car contained a similar length of iron pipe.

Finally, appellant contends that it was currently obliged by an outstanding order of the Office of Defense Transportation to use refrigerator cars for the haulage of freight in less than carload lots. The showing in this respect was sketchy and unsatisfying. The witness testifying on the subject admitted that the order did not require the use of refrigerator cars in situations where their use was dangerous to the handlers of the freight.

The case was one so clearly within the province of the jury to determine that more extended discussion or citations of precedent would add nothing to the learning on the subject.

Affirmed.