Frank Hack, Plaintiff-Appellee, v. The New York, Chicago, and St. Louis Railroad Company, Defendant-Appellant.

Gen. No. 47,868.

First District, Third Division.
September 14, 1960.

Winston, Strawn, Smith, and Patterson, of Chicago (Douglas C. Moir and Edward J. Wendrow, of counsel) for appellant.

Louis G. Davidson, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The New York, Chicago and St. Louis Railroad Company, hereafter referred to as the defendant, has taken this appeal from a judgment in the amount of $40,000 entered on the verdict of a jury in favor of Frank Hack, hereafter referred to as the plaintiff, in a personal injury action brought under the Federal Employers' Liability Act (45 U.S.C.A., secs. 51–60).

On the date of the accident, August 9, 1956, a Pullman Standard Company truck, driven by an employee of the Pullman Standard Company, delivered at the freight house of the defendant in Michigan City, Indiana, a steel box which weighed between 800 and 1,000 pounds, and which contained 100 70-pound steel blocks (7,000 pounds). There is conflicting evidence in the record with reference to the size of the box. It was said to be 40 inches high, 4 feet wide and 5 feet long, or 32 inches high, 42 inches wide, and 60 inches long. The bottom was about 6 inches from the floor, and on the bottom, running the width of the box, were ducts into which the prongs of a fork truck lift would fit. The box did not rest on skids or legs.

The 100 steel blocks which the box contained were destined for Pine Bluff, Arkansas. Each of the blocks was 9 inches wide, 12 inches long, and 2½ inches thick and weighed 70 pounds. At the Pullman Standard Company these blocks had been cut off of a bar by an acetylene torch, and as the blocks were cut they fell into the box. They lay in the box as they had fallen, some flat, some jagged, some standing on end, and some standing at a point jammed in with others. There is testimony in the record that there was an oil film or something on the blocks.

212
.

When freight was brought to the freight house the freight agent, Beecher, had the authority to make the decisions with reference to its reception, and if merchandise was brought to the railroad packaged in a way in which the railroad did not want to accept and handle it, Beecher would inform the shipper as to what method should be used in packaging to make it acceptable. Beecher could either order the goods to be unloaded at the ramp at the freight house where the goods would be moved across the freight house to the boxcars, or unloaded at the north loading zone directly into the boxcars. Once freight had been accepted, then the method of unloading was determined by one Kuchik, who was in actual charge of the freight house. Beecher was in charge of the entire freight operation.

Both Beecher and Kuchik testified that a container such as the one described, filled with steel blocks each weighing 70 pounds, was unusual, and Kuchik during the term of his employment by the railroad from 1938 had never seen a shipment of that kind before, nor had the plaintiff Hack. At the time when the Pullman Standard Company truck arrived Beecher was out of the office, and consequently no decision was made by him as to whether the freight should be accepted in that condition or whether it should be unloaded at the freight house or directly into a boxcar. Beecher had not delegated the authority to make those decisions to Kuchik, nor was there any direction to delay proceedings during the absence of Beecher. There is evidence in the record that Kuchik, in response to the question of the plaintiff, told him to unload them and put them on 4-wheeled hand trucks. Kuchik and the plaintiff were the only men who handled freight. Kuchik went to the freight office with the driver of the truck, and Hack proceeded to unload the truck. The plaintiff placed one of the 4-wheeled hand trucks

213

a short distance from the box and started unloading. In unloading the plaintiff had to reach into the box, pick up one of the steel blocks, straighten up, walk to the hand truck and put the block thereon. After 30 blocks had been put on the 4-wheeled truck, it was then moved into the boxcar to be unloaded. Kuchik took over the unloading of the hand truck. Hullinger, the driver, was assisting the plaintiff in loading the other hand truck. The plaintiff testified that after lifting 8 or 10 more blocks "something snapped in my back"; that he took the block over to the hand truck and dropped it, and told Hullinger that he had hurt his back. Hullinger then suggested that he, Hullinger, get into the box and lay the blocks on the corner so that plaintiff would not have to bend over, and that plaintiff could then carry them to the hand truck. In this manner the balance of approximately 60 blocks was unloaded from the truck and eventually loaded into the boxcar. At the time when the unloading commenced the blocks were approximately 14 inches from the top of the box, and as the unloading proceeded the position of the blocks became lower.

At the time of the occurrence the plaintiff was 27 years of age, was 5 feet 9½ inches tall and weighed 162 pounds. Plaintiff had engaged in hard physical labor all his working life. He worked as a railroad section hand putting in and taking out ties and rails. He served two years in the army without any physical disability. He had worked for the defendant for some four years as a freight handler, and in the course of his duties he had to lift or handle heavy and bulky objects, some weighing as much as several tons. He was active in sports that involved jumping, leaping and running, and in all his physical activities he had never had any trouble with his back. At the time of the accident the plaintiff had certain congenital defects of the spine which predisposed it to injury.

The plaintiff contends that the defendant was negligent since it required the plaintiff to manually unload the 70-pound steel blocks from the box in which they were packed, that the method adopted by the employer was unsafe and hazardous, and that the defendant either should have had available mechanical devices or else should have refused the freight packed as it was.

The defendants moved for a directed verdict at the close of all the evidence, and in its post-trial motion asked for a judgment for the defendant notwithstanding the verdict on the ground that there was no evidence in the record tending to prove that the defendant was guilty of any negligence that was the proximate cause in whole or in part of plaintiff's injuries. In the same motion the defendant moved for a new trial, relying upon alleged errors committed by the court in giving and refusing instructions. The post-trial motion was denied by the court, and the defendant thereupon took this appeal from the judgment which the court entered on the verdict of the jury for the plaintiff.

In this court the defendant makes no complaint with reference to the amount of the judgment, and the only contentions here urged are (1) that the plaintiff failed to prove any negligence on the part of the defendant, and (2) that the giving and refusing of certain instructions by the court constituted reversible error.

 This is a suit brought under the Federal Employers' Liability Act, and the rules governing the procedure in the state courts in this type of case are held to be governed by the decisions of the federal courts in order that the Act may be given uniform application. It has repeatedly been held that a reviewing court in such cases cannot reweigh the evidence. Probably a better statement of that rule would be to say that a reviewing court has no right to consider

the evidence and from that consideration determine as to whether or not the verdict of the jury was against the manifest weight of the evidence. The only question presented to a reviewing court for determination in these cases is as to whether or not there is an evidentiary basis for the jury's verdict, and when such evidentiary basis becomes apparent the appellate court's function is exhausted. The jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. Bowman v. Illinois Cent. R. Co., 11 Ill.2d 186, 142 N.E.2d 104, citing with approval Lavender v. Kurn, 327 U. S. 645; Hall v. Chicago & N. W. Ry. Co., 5 Ill.2d 135, 125 N.E.2d 77; Bonnier v. Chicago, B. & Q. R. Co., 2 Ill.2d 606, 119 N.E.2d 254.

The defendant in its brief discusses at considerable length the inferences which the jury should have drawn from the evidence. That question is not before us. The only question that we can consider is whether the inferences drawn by the jury have an evidentiary basis.

▬ The plaintiff must prove that the defendant was negligent in some degree, that is, that the accident resulted from a breach of a duty which the defendant owed to the plaintiff, and that the negligence of the defendant had a causal relation with the plaintiff's injury. Harper and James, The Law of Torts, vol. 2, sec. 20.5; Wawryszyn v. Illinois Cent. R. Co., 10 Ill. App.2d 394, 135 N.E.2d 154. Negligence is the omission to do something which a reasonable man guided by those ordinary considerations which ordinarily regulate human affairs would do, or the doing of something which a prudent and reasonable man would not do. L. Wolff Mfg. Co. v. Wilson, 152 Ill. 9, 38 N. E. 694. Primarily, before negligence can be imputed

to a defendant by a plaintiff there must have been a duty owed by the defendant to the plaintiff. The employer owes a duty to the employees to see that the employee works under safe conditions. In case the employer violates that duty and an injury results to the employee caused by that neglect, then the employer is legally liable. It has been said: "Every person is negligent when, without intending to do any wrong, he does such an act or omits to take such a precaution that under the circumstances present he, as an ordinarily prudent person, ought reasonably to foresee that he will thereby expose the interests of another to an unreasonable risk of harm." Osborne v. Montgomery, 203 Wis. 223, 234 N. W. 372. The test is what a reasonably prudent person would foresee and would do in the light of this foresight under the circumstances, and this test is properly applied to determine whether the defendant was or was not negligent. This concept has been applied by many courts to causation, though this view has been criticized by Green in his Rationale of Proximate Cause. Also see Harper and James, The Law of Torts, vol. 2, secs. 20.4, 20.5. In Ney v. Yellow Cab Co., 2 Ill.2d 74, 117 N.E.2d 74, the court says: "The law of probable cause holds that an injury which is the natural and probable consequence of an act of negligence is actionable and such an act is the proximate cause of the injury. The injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either a remote cause, or no cause whatever of the injury." See Seith v. Commonwealth Elec. Co., 241 Ill. 252, 98 N. E. 425.

In the instant case the alleged negligence of the defendant is its failure to carry out its duty to provide the plaintiff with safe conditions and equipment under and with which he might work. In the instant case the agent of the defendant ordered the plaintiff

217

to manually unload the 70-pound metal blocks, which had something like an oil film covering them and which were piled higgledy-piggledy in a steel box which, as the jury could have believed, was 40 inches high. The question of whether or not such conduct on the part of the defendant was negligence depends on two elements: first, as to whether the removal of some 70 of those blocks under those circumstances by a man in a reasonably normal condition could have resulted in injury to him, and second, as to whether such consequence should have been reasonably foreseen by the defendant at the time the order was given.

The duty owed by the defendant in any case depends upon the special conditions prevailing at the time and place of the accident. The question here is not as to whether an injury of the severity of the one in the case before us could have occurred, but only as to whether any injury could have occurred resulting from the employee's obedience to the order of the employer.

Negligence is generally "a mixed question of law for the court and fact for the jury, and negligence cases in which a nonsuit may be allowed or a verdict may be directed are exceptional. On a motion for nonsuit all conflicts in testimony . . . must be resolved in favor of the plaintiff." 38 Am. Jur. Negligence, sec. 344; Kennedy v. Swift & Co., 234 Ill. 606, 611, 85 N. E. 287. Ordinarily in determining as to whether conduct is negligent or not negligent in the light of the foreseeability of the results which occurred, the question is one which a jury may on its own general knowledge resolve without the benefit of expert testimony. ▮ In the case before us there is in the record evidence by physicians that the method of lifting the metal blocks under the circumstances detailed in the evidence could result in an injury to a normal person because of the position which would be assumed by the person doing the lifting, and the testimony of

Beecher, the freight agent, was in accord. It also could have been considered by the jury that such a result under all the circumstances in the case could and should have been foreseen by the employer, and this conclusion is supported by many cases. Railway Express Agency v. Bollier, 253 S.W.2d 669 (Tex.); Zegan v. Central Railroad Company of New Jersey, 266 F.2d 101; Atchison, T. & S. F. Ry. Co. v. Studer, 213 F.2d 250. In Illinois Cent. R. Co. v. Siler, 229 Ill. 390, 394, 82 N. E. 362, the court says:

> "In order to make a negligent act the proximate cause of an injury it is not necessary that the particular injury, and the particular manner of its occurrence, could reasonably have been foreseen. (City of Dixon v. Scott, 181 Ill. 116.) If the consequences follow in unbroken sequence from the wrong to the injury without an intervening efficient cause, it is sufficient if, at the time of the negligence, the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence."

In the record before us there are evidentiary facts from which the jury could find that there was negligence on the part of the defendant. As we have pointed out, under decisions rendered under the Federal Employers' Liability Act it is immaterial how slight this negligence is provided it exists at all. In Lavender v. Kurn, supra, it is said:

> "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference."

■ There is considerable space devoted in the briefs of both the plaintiff and the defendant to discussing plaintiff's testimony concerning devices and procedures by which the box could have been unloaded of its contents safely. This discussion in our opinion is of no value whatsoever. The duty did not rest upon the plaintiff in this case to show that there was a safe method of unloading the box. "As a general proposition it is not essential to a party's case that he prove or otherwise show what his opponent should have done under the circumstances. It is enough to show what he did, and what the circumstances were. It is then for the jury to determine whether, in the light of their common experience in the affairs of men, they find he failed to act as a reasonable man would have acted. . . . The jury's finding of negligence is thus always that the actor should not have acted as he did; this implies a finding that he should have acted otherwise, but not necessarily in any specific manner." Harper and James, The Law of Torts, vol. 2, sec. 17.1. Under the rules of the railroad company as testified to by Beecher, the freight agent, he could have properly rejected the box and its contents until it was packaged by the shipper in a way which Beecher felt was safe for his men to handle. This was not done. Consequently whether the box could have been unloaded by means of a crane and jacks or otherwise is entirely immaterial, and the argument devoted by the defendant to showing the impossibility of the methods suggested by the plaintiff is idle. The box did not have to be unloaded at all.

■ The defendant in its brief makes much of the fact that a statement made by the plaintiff to a claim agent (erroneously stated in defendant's brief as made to the freight agent) contradicted plaintiff's statement on the stand that he first felt the pain in his back when he was straightening up holding a metal

block and raising it from its place in the box. In the statement he says that at the time when he felt something tear in his back he was starting to walk towards the 4-wheeled truck. His entire statement is somewhat confused, and in any case the plaintiff specifically denied that he had made such a statement to the claim agent. The defendant did not see fit to put on the stand the claim agent who took the statement. Whether the statement be considered as impeaching evidence or as an admission, it is within the purview of the jury to decide whether they will accept the testimony of the plaintiff in court even though it is not strictly in accord with a prior statement made by him. Here the jury, in the absence of testimony of the agent who took the statement, could have properly believed the testimony of the plaintiff that he had not said the things contained in that statement. The jury could have properly disregarded the statement in its entirety. Chicago City Ry. Co. v. Matthieson, 212 Ill. 292, 72 N. E. 443; Santiemmo v. Days Transfer, Inc., 9 Ill.App.2d 487, 133 N.E.2d 539; McCormick on Evidence, sec. 34.

■■ The defendant also argues that Hullinger, the driver of the truck, had lifted two or three of the blocks in a similar manner to that used by the plaintiff and had suffered no injury. It is elementary law that the fact that any number of persons have escaped injury where a dangerous condition exists cannot be used as a basis for determining whether or not danger existed which, if injury resulted, would have substantiated an action for negligence on the part of the injured person. The defendant also argues that Hullinger adopted a method which should have been adopted by the plaintiff as a safe method of removing the blocks. After the injury had occurred Hullinger climbed into the box and, standing in the box, put the blocks on the corner of the box. Hullinger himself

testified that he was equipped with steel-toed shoes, that the footing in the box was precarious, in which testimony he was supported by the testimony of Hack, and that without the steel-toed shoes it would have been dangerous to go into the box as he did. There is no evidence in the record that the plaintiff was equipped with steel-toed shoes.

 The defendant objects to certain instructions given by the court over its objection. In plaintiff's instruction No. 7 the court told the jury: "It was the duty of the defendant, at the time of and prior to the occurrence complained of, to exercise ordinary and reasonable care to furnish the plaintiff with tools and appliances reasonably adequate to do the work." The defendant argues that this instruction was erroneous inasmuch as the defendant furnished no tools whatsoever to the plaintiff to enable him to unload the blocks and that hence the instruction would in the factual situation in the case tell the jury the defendant had breached its duty and hence was negligent. The court also instructed the jury at the request of the defendant that "defendant had no duty to cause the steel plates in question to be unloaded by a mechanical appliance or appliances or means other than by hand unless you find from all the circumstances that defendant, in causing them to be unloaded by hand, was negligent." The instruction objected to was not a peremptory instruction. All that is necessary is that the instructions, taken as a series, correctly advise the jury as to the law applicable to the case. Minnis v. Friend, 360 Ill. 328, 196 N. E. 191; People v. Falley, 366 Ill. 545, 9 N.E.2d 324. Furthermore, in his argument to the jury counsel for defendant said: "And I think the Court may also tell you that we had no duty to cause the steel plates in question to be unloaded by a mechanical appliance or appliances or means other than by hand unless you find from all the cir-

cumstances that the defendant in causing them to be unloaded by hand was negligent. That is all it comes down to, the question of were we negligent?" The law laid down in the instruction was brought before the jury by the defendant. Reading the instructions together the law is correctly stated. We find no error in the giving of the instruction.

■■ ■■ The defendant also objects to plaintiff's instruction No. 16 because it refers to the plaintiff's complaint and does not in itself incorporate a summary of the allegations of the complaint. However, plaintiff's instruction No. 1 substantially gave a summary of the issues in accordance with the rule laid down in Signa v. Alluri, 351 Ill. App. 11, 113 N.E.2d 475. It is elementary that the jury must consider the instructions as a series, and in this case they were so instructed. Instruction No. 16 was properly given.

The defendant also objects to the refusal by the court to give four of its instructions, all relating to the congenital physical condition of the plaintiff. It contends that at least one of the instructions should have been given in order to place fairly before the jury defendant's theory of the case. The instructions complained of are as follows:

"10. The Court instructs the jury that defendant had a right to assume that plaintiff was in a normal physical condition, and if you find from the evidence that plaintiff was not in a normal physical condition at the time of the occurrence in question, but that he had a congenital condition in his back which predisposed him to injury while lifting objects, and that plaintiff would not have been injured while lifting if he had a normal back, defendant cannot be held liable to plaintiff for permitting him to lift the plates in question unless it had actual knowledge of such congenital condition, if any."

223

"11. The Court instructs the jury that, if you find that plaintiff would not have been injured in consequence of his lifting the plates in question but for an existing congenital condition in his back, defendant cannot be held liable unless plaintiff proves that such congenital condition, if any, of his back was actually known to defendant."

"12. The Court instructs the jury that, under the law, where an employee claims that he has suffered an injury from lifting an object or objects, the employer is not guilty of negligence in asking or permitting him to do the work in question unless it is beyond the powers of the ordinary man, as the employee is presumed to be able to do what an ordinary man in the same line of occupation can do and is the best judge of his own capacity."

"15. The Court instructs the jury that under the law the defendant had a right to assume that plaintiff possessed the ordinary physical capacity of a man engaged in his occupation and that it was not required to anticipate that he had any physical condition which might predispose him to injury while lifting objects."

The plaintiff in the instant case proceeded on the theory that under the conditions existing at the time of the unloading procedure an injury could result to a normal person, and there is evidence in the record tending to establish that fact. As expressed by the plaintiff in his brief: "What plaintiff claims is that where the physical dimensions of the container and the condition and placement of the blocks in that container require lifting by an employee from an awkward position or posture which is known to the employer and admittedly dangerous because of the undue strain it imposes on his back, defendant is negligent both for adopting the method of doing the work which exposes

224

the employee to the greatly increased likelihood of injury, and for not supplying proper equipment to make this hazardous method unnecessary." As far as we can discover from its brief the defendant accepts that as the theory of the case, and it is apparent from the record that the case was so tried. As we have pointed out, the issue in the case is whether or not the defendant by ordering the plaintiff, its employee, to unload the blocks under all the circumstances in the case, was negligent because it should have reasonably foreseen that there was a potential danger of injury to a person with no congenital defects.

██ The defendant was entitled to instructions presenting the theory upon which it relied as a defense. Each party has the right to have the jury instructed upon his theory of the case if it has a basis in the evidence upon which to rest. Chicago Union Traction Co. v. Browdy, 206 Ill. 615, 69 N. E. 570.

██ Two of the refused instructions (Nos. 10 and 11) were peremptory in character and in effect told the jury that if the injury occurred only because of a congenital condition in plaintiff's back then the plaintiff cannot recover unless the defendant had knowledge of it. No issue was made with reference to the knowledge of the defendant, and it was admitted that neither the plaintiff nor the defendant knew of the plaintiff's congenital condition. There is no basis in the evidence for such instructions and they would only tend to confuse the jury. The jury might interpret those instructions to mean that even if the defendant were guilty of acts of negligence which would create a potentiality of danger for a normal person the plaintiff would be barred from recovery because of the severity of the injury suffered by him which would not have occurred except for his congenital defect. The question as to the cause of the resulting injury was amply covered by other instruc-

225

tions tendered by the defendant and given by the court, in one of which the court told the jury that "under the law, an employer is not required to guard against the happening of occurrences which an ordinarily prudent person could not anticipate. If you find that the injuries to the plaintiff were the result of an occurrence that could not have been reasonably anticipated by an ordinarily prudent person, then you should find the defendant not guilty." In another given instruction, peremptory in character, the jury were charged that they could not conjecture as to the cause of any claimed ailments or disabilities but that the plaintiff was required to prove that they were caused by the accident in question before he can recover. Another instruction given at the request of the defendant told the jury that the defendant must be found not guilty if plaintiff's injury was the result of an accident which occurred without negligence on the defendant's part. If the plaintiff had alleged that the defendant had knowledge of the physical defect of the plaintiff and was negligent because it did not exercise the degree of extra care then required and the defendant by denying knowledge of the condition had made an issue thereon, even in such a case the two instructions would not have been proper because they do not incorporate all the facts which would authorize a verdict in accordance with the requirements of peremptory instructions. Hanson v. Trust Co. of Chicago, 380 Ill. 194, 43 N.E.2d 931. The instructions would tend to confuse the jury rather than to enlighten it. The liability of the defendant should depend upon whether the operation of unloading the blocks, as ordered by the employer in the instant case, was a safe method and whether sufficient equipment was furnished by the employer. The "foreseeability" required of the defendant should not be based on the particular physical condition of the plaintiff (where

the disability is unknown to the defendant), but on whether the defendant should foresee with respect to a normal person that any injury or some injury of the type in question would result therefrom.

The vice in instruction No. 12 is that, because of the manner in which the work was required to be done, under the issues in the case negligence on the part of the defendant could be properly found even though the work was not beyond the power of an ordinary man. "To do the work in question" could refer merely to the lifting of 70-pound blocks rather than to the manner and conditions in and under which the plaintiff was required to remove them from the box. This instruction also intimates that contributory negligence and assumption of risk should be considered by the jury as a defense. Under the Federal Employers' Liability Act the defense of assumption of risk is abolished and it is also provided that contributory negligence of a plaintiff shall not bar a recovery. Hall v. Chicago & N. W. Ry. Co., 5 Ill.2d 135, 125 N.E.2d 77. The instruction is peremptory in character and does not incorporate all the necessary facts to authorize a verdict, and again it raises the false issue that the test is the defective physical condition of the plaintiff rather than that of the normal man. Instruction No. 15 again raises the question of the physical capacity of the plaintiff. The instruction might be considered as assuming that the plaintiff's injuries were caused only by his defective physical condition.

Upon the record before us the refusal of the court to give defendant's instructions Nos. 10, 11, 12 and 15 was not prejudicial error.

We find no error in the record. The judgment of the Circuit Court is affirmed.

Affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.