John S. Campbell, Plaintiff-Appellee, v. The Chesapeake and Ohio Railway Company, a Corporation, Defendant-Appellant.

Gen. No. 48,332.

First District, First Division.
June 25, 1962.
Rehearing denied July 30, 1962.

Gardner, Carton, Douglas & Chilgren, of Chicago (Joseph P. Carr and John K. Notz, Jr., of counsel), for appellant.

James A. Dooley, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

In an action under the Federal Employers' Liability Act plaintiff recovered $60,000 for the loss of his right eye. Defendant railway has appealed upon the grounds that the trial court erred in denying defendant's mo-

tions for a directed verdict, for a judgment notwithstanding the verdict, and for a new trial premised on the manifest weight of the evidence. Defendant cites additional errors in the admission and rejection of evidence, the rulings on motions, the giving of certain instructions and the remarks of plaintiff's counsel.

The evidence reveals that on March 29, 1951, plaintiff, John S. Campbell, employed as a machinist in defendant's wheel shop in Stevens, Kentucky, was operating a "wheel lathe" in a process of resurfacing railroad car wheels. The lathe was specially equipped with two separate turrets or tool heads, spaced apart the width of a railroad car axle so that a pair of railroad wheels joined by an axle could be rolled on a spur track directly into place in the lathe, and both wheels could be turned and machined simultaneously. Each turret contained four tool holders, each designed to hold a different cutting tool. The hardened steel tools were used in progressive steps in the rounding, truing and refinishing of the railroad wheels. Involved in the case at bar is the "roughing tool" in the left turret of the lathe. This tool was used in the initial step of the operation and accomplished the bulk of the cutting.

On the evening in question plaintiff, who had been wearing the safety goggles provided by his employer, finished the machining of a set of wheels, turned off the machine, and, as was his custom when the lathe was not in operation, removed his goggles. Upon the completion of each set of wheels it was necessary for plaintiff to check the condition of the cutting tools, which occasionally needed replacing or turning to a fresh cutting surface. As the wheels were being removed from the lathe by plaintiff's helpers, Denver Patterson and Charles M. Roth, plaintiff started to remove the tools from the holder.

Plaintiff testified that as he lifted the "roughing tool" out of the holder on the left side some foreign

object came with it, striking him in the eye and causing a sharp pain. He dropped the tool and cried out. Roth said he heard plaintiff yell and saw him directly behind the lathe holding his eye. Patterson said that he heard plaintiff exclaim that something hit him in the eye, and saw plaintiff straightening up from the tool head on his left. Plaintiff then went to the washroom to examine his eye. Both Patterson and Roth examined the eye but could not find anything. Roth stated that before quitting time he noticed that the eye was turning red. The next day plaintiff saw the company doctor who examined and treated the eye on that and several subsequent occasions. The treatments did not help so plaintiff visited another doctor who removed a sliver of steel from his eye. The eye did not heal, however, and after an unsuccessful corneal transplant, had to be removed. Plaintiff now uses an artificial eye.

The complaint charged that defendant carelessly and negligently (a) failed to provide plaintiff with a reasonably safe place to work; (b) failed to provide plaintiff with proper tools and equipment which were necessary for the safe performance of his work; (c) maintained certain equipment, with which plaintiff was required to work, in a defective and dangerous condition; (d) allowed its tool holder to remain in a defective and unsafe condition for an unreasonable length of time; and (e) controlled and maintained its equipment so that as a proximate result thereof plaintiff sustained injuries.

Defendant insists that there was no evidence of negligence sufficient to justify a jury verdict for plaintiff; hence, it was error for the trial court to deny defendant's motions for a directed verdict and for judgment notwithstanding the verdict. We must consider this contention within the framework of clear and established rules. The Federal Employers' Liability Act compels a carrier to respond in damages for any injury

to one of its employees resulting in whole or in part from the negligence of any of its officers, agents, or employees. Neither assumption of risk nor contributory negligence can bar a recovery. (Finley v. New York Cent. R. Co., 19 Ill2d 428, 433, 167 NE2d 212.) Of such actions the United States Supreme Court has pronounced that the test of a jury case is "simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." (Rogers v. Missouri Pac. R. Co., 352 US 500, 506.) While the jury determination must be supported by something more than mere speculation (Moore v. Chesapeake & O. Ry. Co., 340 US 573), it is not within our province to weigh the probabilities between conflicting inferences for which there is an evidentiary basis. (Hack v. New York, C. & St. L. R. Co., 27 Ill App2d 206, 216, 169 NE2d 372; Rogers v. Missouri Pac. R. Co., 352 US 500, 506, 507.) As defendant sought to remove the case from the jury the question of law here presented is whether, upon a consideration of all the evidence together with all reasonable inferences that can be drawn therefrom and viewed in its light most favorable to plaintiff, there is a total failure or lack of evidence to prove that the defendant was guilty of negligence which contributed in whole or in part to the injury. (Bonnier v. Chicago, B. & Q. R. Co., 2 Ill2d 606, 119 NE2d 254; Hall v. Chicago & N. W. Ry. Co., 5 Ill2d 135, 125 NE2d 77.)

The evidence discloses that the cutting tool which plaintiff was removing at the time of his injury was being held in a worn or sprung tool holder. This condition of the holder permitted a gap of about one eighth of an inch to exist between the tool and the holder, in which dirt, rust, grease, and fine shavings of metal accumulated causing the tool to become wedged and difficult to remove. Plaintiff testified that on this par-

ticular night he had to work the tool about thirty seconds before starting to lift it out. He demonstrated how he would have to stand, straddling part of the machine, when removing a tool. In that position his eye was about eighteen inches to two feet from the tool holder. Plaintiff said, "as I pulled, something hit me, and I dropped the tool right away."

Plaintiff explained that, when placed in the sprung holder, the rough cutting tool would not fit snugly as it should. This condition had existed for approximately a year, and plaintiff stated that when he had complained about it to the foreman he was simply given a new set of tools which didn't alter the condition of the holder or rectify the problem. He explained that when the tool fit properly particles would not be able to collect down around it and the tool would slide out easily. Because of the accumulation in the defective holder, however, it was necessary "to shake it back and forth, and twist it a bit to free it."

Denver Patterson corroborated plaintiff's testimony to the effect that the holder in question was sprung causing a gap in which dirt and shavings would accumulate. He said the result was that the tool would become wedged and difficult to remove. Patterson also indicated that a tool would fit snugly in a holder in proper condition, and that nothing could accumulate around the tool and it could be removed easily. He said he was present on three or four occasions when plaintiff reported the defective condition to their foreman.

██ ██ Under the Federal Employers' Liability Act the employer must use reasonable care to provide tools and equipment which are safe and suitable for the work to be done. (Finley v. New York Cent. R. Co., 19 Ill2d 428, 435, 167 NE2d 212.) We think the evidence was quite sufficient to support a jury determination that defendant was negligent in permitting the defective condition of the holder to exist and remain after nu-

merous complaints. Further, we consider it a reasonable jury inference that defendant's negligence, which allowed the dirt and shavings to accumulate, bore a causal relationship to plaintiff's injury. The trial court, therefore, ruled properly on defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

■ Defendant presents the related contention that the verdict was against the manifest weight of the evidence. This proposition was given full consideration in Hack v. New York, Chicago & St. Louis R. Co., 27 Ill App2d 206, 215, 216, 169 NE2d 372, where it was held that under the Federal Employers' Liability Act "a reviewing court has no right to consider the evidence and from that consideration determine as to whether or not the verdict of the jury was against the manifest weight of the evidence." (See also, Bowman v. Illinois Cent. R. Co., 11 Ill2d 186, 142 NE2d 104; Harsh v. Illinois Terminal R. Co., 351 Ill App 272, 114 NE2d 901, reversed 348 US 940, rehearing denied, 348 US 977; Lavender v. Kurn, 327 US 645.)

■ ■ Defendant next contends that evidence was improperly admitted which showed that the Milwaukee Road employed on its lathe used for similar work a cone-shaped tool with a locking pin, and that their machinist experienced no spreading of the holder or accumulation of shavings in the holder. Defendant argues that the evidence was irrelevant and immaterial to the issue of defendant's negligence, and that, as evidence of a safer method, it was introduced without the proper foundation since plaintiff showed neither the availability of the device, nor defendant's knowledge of its availability, nor proof of its suitability to defendant's particular lathe. The admissibility of evidence of a safer method is a matter within the discretion of the trial judge. (Wawryszyn v. Illinois Cent. R. Co., 10 Ill App2d 394, 401, 402, 135 NE2d 154.) The evidence, as

we have previously discussed it, provided an ample basis for a conclusion of negligence without evidence of a safer device such as that now under consideration. Had defendant merely continued to use the same style of holder, but provided one that was not defective the dangerous condition would not have existed. We are not seeking to illustrate that the evidence of a safer method was irrelevant, for such is not the case. (Margevich v. Chicago & N. W. Ry. Co., 1 Ill App2d 162, 116 NE2d 914.) The point we make is that such evidence was not indispensible to a jury determination of negligence under the facts before us. Thus we would be inclined to find that, had the evidence of a safer method been without proper foundation, the error in admitting it would not have been grounds for reversal. Speaking directly to its admission, however, we find that the trial court did not abuse its discretion.

Cited as further error is the trial court's restriction of defendant's use on cross-examination of plaintiff's deposition for purposes of impeachment. A review of the entire discourse reveals that the trial judge was lenient to both parties on this particular subject. The trial judge sustained an objection to but one question in this regard, the nature of which, when lifted out of the context of the deposition, could have been unclear and misleading. Under the circumstances we think the action of the trial court was proper.

The contention is also made that it was error to deny defendant's motion to withdraw a juror in light of the prejudicial remarks made by plaintiff's counsel during closing argument. Although plaintiff's counsel's closing argument was not abstracted in its entirety for our benefit, we have examined it with care from the record. We do not think the remarks could have had a prejudicial effect upon the jury.

Defendant also takes issue with the giving of the following instruction:

It was the duty of the defendant, at the time and place in question, to exercise reasonable care and prudence to provide the plaintiff with a safe place in which to work, and to use reasonable caution to keep such place in a reasonably safe condition.

According to defendant this instruction is inaccurate because it evokes the duty to provide plaintiff with an absolutely safe place to work rather than a "reasonably safe" place to work. In addition, defendant claims there was no evidence that the "place of work," as contrasted with tools and equipment, was unsafe. While this objection was not made to the trial judge in the form specifically raised here we have, nevertheless, considered it fully. In terms of its form and the theory of law it conveyed to the jury we do not think the instruction was inaccurate. The jury could not have been led to believe that it imposed an absolute standard. And with regard to its correlation to the evidence, it seems to us obvious that the concepts are overlapping. Defects in tools and machinery are part and parcel of the overall working conditions. We find no error in the giving of this instruction.

■■■ Finally, defendant attacks the instruction relating to plaintiff's loss of future earnings. In light of the fact that defendant informed us in its brief that it did not dispute the amount of the verdict, either below or in this court, we do not consider this contention to be of any merit.

Upon the facts as herein discussed, and under the recognized standards of conduct imposed by the FELA, it is the opinion of this court that no valid ground for reversal has been shown. Accordingly, the judgment of the Superior Court is affirmed.

Affirmed.

MURPHY, J., concurs.

ENGLISH, J., dissenting:

I cannot agree that there was evidence of negligence on the part of defendant, or, if such were conceded to exist, that it bore any causal relationship to plaintiff's injury.

To begin with, there is no evidence, direct or circumstantial, as to how the speck of steel got into plaintiff's eye.

I realize that plaintiff testified that as he lifted the tool out of its holder "some foreign object came with it" and struck him in the eye. This is not evidence, however, but the rankest kind of speculation or mere calculated expression of theory, since the proofs established conclusively that the minute particle of steel was so small that it could not be seen by the naked eye. This testimony is, therefore, entitled to no more standing than would be the testimony of a blind person as to what he had "seen."

The law requires some qualification of a witness which will justify the court's receiving his testimony, and the rules established toward this end are concerned with the necessity of showing his opportunity for observing and his actual observation. As stated by Wigmore: "Observation of the matters to be testified to is an essential conception in the qualification of every witness without exception." (Wigmore on Evidence, § 651.) Without this fundamental safeguard, any speculation stated as fact could be considered as presenting a jury question. And this, in my opinion, is precisely what the majority have done in the instant case when they permit a verdict to rest upon this direct "evidence" of plaintiff.

I am not unmindful of the extreme to which some of the Federal Employers' Liability Act decisions have gone in recognizing the existence of questions of fact for the jury. I know of none, however, which has gone as far as the majority opinion does in accepting, as a

286

basis for verdict, testimony about something which was beyond the sensuous perception of the witness. The speculation thus involved cannot properly take the place of the proof which plaintiff had the burden of producing. (Moore v. Chesapeake & O. Ry. Co., 340 US 573.)

Nor has that lack been supplied by circumstantial evidence. Plaintiff's evidence shows that in the wheel-grinding operation engaged in by plaintiff, steel shavings and tiny particles of steel and steel dust "as fine as a pin point" bounce off in all directions; some of the shavings drop on top of the machine, some on the other side underneath the wheels, some up around the tool; "some of them fly." Plaintiff's helper on the job testified that after each operation was concluded he would clean off the lathe with a brush and use an air hose for that purpose when they were finished for the day.

While the grinding operation was going on, plaintiff and his helper wore their goggles. When dusting off the lathe, the helper also wore his goggles.

During the evening in question a wind was blowing in the building through the large doors nearby. These were the doors through which the wheels, connected by axles, were moved on tracks to the lathes.

It is against this background that plaintiff's lifting of the tool from its holder must be considered. For as the case developed, the negligence charged to defendant was the use of the sprung tool holder, and plaintiff, therefore, had the burden of producing evidence to show that the particle which entered his eye came from the tool in his hand or the holder from which he lifted it, and not from any place else.

Plaintiff testified that after shaking the tool back and forth and twisting it a little to free it, he lifted it up and out of the holder.* He did not testify that he

---

\* This was not the first time plaintiff had changed the tools during the evening in question.

lifted the tool up to his eye level (1½ to 2 feet), and it would have been ridiculous for him to have lifted it that high. Nor was there any evidence that the tool was jerked out of the holder by plaintiff or that any strong pull was required. In fact, plaintiff testified that it didn't require any strength to lift out the tool; that "a lady could do it very easily." His helper agreed, testifying that "a child could pick it up." (The tool itself was a steel cylinder only about 1½ inches in diameter and 2½ to 3 inches long.)

From these circumstances plaintiff must, if reliance is to be made on circumstantial evidence, contend for either one of two inferences: (1) that the invisible speck of steel was pocketed in the tool holder under or behind the tool and when released it sprang straight up on its own, two feet through the air to plaintiff's eye, even though it must be admitted that such a minute particle could not possibly have the physical characteristics of a tightly-wound steel spring which might ordinarily be capable of such a maneuver upon release; or (2) that the speck of steel adhered to the tool upon its removal from the holder and after thus being carried for several inches, and without there being any jerk or sudden impetus given to it, it then ceased its adherence to the tool and travelled independently straight up into the air the rest of the way.

Both these suggested inferences are contrary to reason and the law of gravity—especially when considered against the background circumstances of wind blowing through the building and steel shavings and particles all over the place, having been thrown off from the machine in all directions through the air less than a minute before. Both the positive and negative inferences required for plaintiff's case—that the particle of steel came from the tool or tool holder and that it did not come from any other source—are wholly unreasonable. Circumstantial evidence as to the occurrence of

the injury in accordance with plaintiff's theory of his case is, therefore, lacking by definition, for the facts or circumstances in evidence are to be considered as proper proof only if they give rise to a *reasonable* inference of the truth of the fact sought to be proved. (IPI 1.03 and cases there cited.)

The evidence which, it is claimed, shows negligence on the part of defendant is the continued use of the tool holder after it had become sprung and after repeated complaints by plaintiff to his foreman. It is significant, I believe, that in making complaint, plaintiff had no thought whatsoever of calling attention to a dangerous condition. He testified only that, with the tool being looser than it should have been in the holder, it chattered and gave an uneven cut which required him to take more time in smoothing out the wheels with the other tools. The entire gist of his complaints was toward efficiency of operation rather than safety.

Plaintiff, himself, certainly foresaw no danger in the condition of the holder, for he customarily removed his goggles before changing the tools. Was there any circumstance, then, which required defendant to foresee danger? I can find none. And, if there was no foreseeable danger, was there any negligence in permitting a somewhat inefficient, time-consuming operation of the lathe? I believe not. A finding of negligence in this case does not square with the repeated authoritative holdings to the effect that, in determining the existence of negligence, the consequences of the employer's acts must be tested for reasonable foreseeability. Nor is it consistent with the often expressed and presently undisputed principle that a railroad is not an insurer of its employee's safety. Yet that is the practical result of the majority's decision here, for surely no one could have foreseen or had any intimation of danger in the circumstances of the present case. It may well be that the trend of the decisions is in the direction of a rail-

road employer's liability without fault, but I believe that we should not anticipate its extension beyond the limits currently defined. (Inman v. Baltimore & Ohio R. Co., 361 US 138; Brady v. Southern Ry. Co., 320 US 476; Scocozza v. Erie R. Co., 171 F2d 745, cert den 337 US 907; Southern Ry. Co. v. Bell, 114 F2d 341.)

If we were to assume that negligence on the part of defendant had been established, plaintiff's proof would still fail for lack of evidence of causation. This would be true not only because there is no proof as to how the steel speck entered plaintiff's eye, but also because defendant's furnishing of a brand-new unsprung tool holder would have made no difference whatsoever to the occurrence in question.

An unsprung tool holder in evidence discloses that the space around the tool, while less than ⅛ inch, is, nevertheless, many times the diameter of the steel particle which entered plaintiff's eye. If a new tool holder had been furnished on plaintiff's complaint, it would have prevented the accumulation of the larger steel shavings, but this case is not concerned with the larger shavings. It is concerned only with a minute speck of steel, hundreds or thousands of which could have accumulated in a tool holder which was in perfect condition.

Under the controlling statute it is as much a part of plaintiff's burden to show causation as it is to show negligence, and this he has utterly failed to do in the case at bar. The jury was permitted to speculate again in order to find a connection between the alleged negligence and the injury.

In Atchison, Topeka & Santa Fe Ry. Co. v. Toops, 281 US 351, the Supreme Court stated at pages 354, 355:

"But proof of negligence alone does not entitle the plaintiff to recover under the Federal Employers' Liability Act. The negligence complained of

290

must be the cause of the injury. The jury may not be permitted to speculate as to its cause and the case must be withdrawn from its consideration unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer. (Citing cases.)"

After commenting that the testimony lacked substance (as it does in this case), Mr. Justice Stone concluded:

"If allowed to sustain the verdict it would remove trial by jury from the realm of probability, based on evidence, to that of surmise, and conjecture."

To the same effect see also Atlantic Coast Line Railroad Co. v. Collins, 235 F2d 805, 808, cert den 252 US 942; Dessi v. Pennsylvania R. Co., 251 F2d 149, 151, cert den 356 US 967; and Finley v. New York Cent. R. Co., 19 Ill2d 428, 434, 167 NE2d 212.

Surmise, conjecture and speculation—not evidence—constitute the basis for the verdict in this case. In my opinion, the trial court should have allowed defendant's motion for judgment notwithstanding the verdict.