GARY H. FINKE *et al.*, Plaintiffs-Appellees, *v.* ELMER H. WOODARD, Defendant-Appellant.

Fourth District   No. 4—83—0328

Opinion filed March 27, 1984.

912

Raymond R. Kimpel, of Summers, Watson & Kimpel, of Champaign, for appellant.

Carl M. Webber, of Webber & Thies, P.C., of Urbana, for appellees.

JUSTICE TRAPP delivered the opinion of the court:

This action was brought by plaintiffs, Gary and Teresa Finke, to recover damages and an order of rescission as a result of defects in a new home built and sold by defendant Elmer Woodard. Among the issues to be considered in this appeal are whether plaintiffs' suit is barred by section 13—214 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13—214) or *laches,* whether plaintiffs are entitled to rescind the sale, and the appropriate measure of restitution following a rescission of the sale. We affirm the award of rescission, but reverse and remand this cause for appropriate findings on the proper amount of restitution to which plaintiffs are entitled.

At trial, plaintiffs testified that on April 23, 1977, they executed a purchase agreement with defendant for the sale of a new house under construction by him in Heather Hills subdivision near Champaign. Plaintiffs paid $52,050 for the house, moved in on June 16, 1977, and continued to occupy it at the time of trial. Plaintiffs testified that they began to experience problems with the home upon taking possession, leading them to file this lawsuit in which they sought recovery on theories of implied warranty of habitability, negligence, gross negligence, and fraud. The plaintiffs testified to a number of complaints within the home: the water conditioner was installed backwards causing filtering chemicals to be discharged, the dishwasher was improperly installed allowing water from the garbage disposal to drain into the dishwasher, a septic system malfunctioned forming a pool of effluent in the backyard, the interior walls of the house were weak and separated from the ceiling, nails continuously popped out in various

locations in the house, doors would not close, a crack developed in the concrete floor of an outside storage shed, and a portion of the bathroom plumbing broke loose from its connection causing water damage to the floor and tile. The jury found for plaintiffs on theories of warranty, negligence, and gross negligence and returned a not guilty verdict on the fraud count. The jury also awarded plaintiffs both rescission of the sales contract and deed and damages.

■ Defendant's first argument on appeal is that plaintiffs' suit is barred by section 13—214(a) of the Code of Civil Procedure, which provides:

"Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 2 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." Ill. Rev. Stat. 1981, ch. 110, par. 13—214(a).

Plaintiffs' home was completed by June 16, 1977, and the original complaint was filed on July 7, 1981, well beyond the two years in which plaintiffs knew or reasonably should have known of the acts or omissions of the defendant as provided in that section. If this were the only circumstance to consider, then defendant's argument would be well taken, but defendant fails to point out that the statute was amended after plaintiffs' suit was filed.

Effective November 29, 1979, Public Act 81—1169 added section 21.3 of the former Limitations Act, the current section 13—214 of the Code of Civil Procedure. (1979 Ill. Laws 4480; Ill. Rev. Stat. 1981, ch. 83, par. 22.3.) At that time, Public Act 81—1169 provided in subsection (e) that "[t]he limitations of this section [current section 13—214] shall apply to all acts or omissions which occur on or after the effective date of this amendatory Act of 1979." On July 7, 1981, plaintiffs filed their suit when the statute contained that section. On September 16, 1981, Public Act 82—539 deleted subparagraph (e) (1981 Ill. Laws 2709) and on July 1, 1981, Public Act 82—280 incorporated chapter 83 into chapter 110 of the new Code of Civil Procedure, erroneously including old subparagraph (e) (1981 Ill. Laws 1591). Finally, on July 13, 1982, the Revisory Act of 1982, Public Act 82—783, deleted subparagraph (e). 1982 Ill. Laws 397.

Thus, at the time plaintiffs filed their suit, former section 21.3 of the Limitations Act had a prospective application, applying to acts or omissions occurring after November 29, 1979. The acts or omissions

at issue here, the improper construction of the home, occurred on or before 1977 and were outside of the plain language of that section. When plaintiffs filed suit, the only applicable limitation period was section 15 of the Limitations Act, which provided a period of five years for all civil actions not otherwise provided for. (Ill. Rev. Stat. 1979, ch. 83, par. 16.) To retroactively apply the deletion of subparagraph (e) as defendant urges, would result in the barring of plaintiffs' action, a result which is clearly not permitted. As noted by the supreme court in *Hupp v. Gray* (1978), 73 Ill. 2d 78, 83, 382 N.E.2d 1211, 1213, and amendment which shortens a limitations period may not operate to divest a litigant of a cause of action if his suit has already been filed. We conclude that plaintiffs' suit was not barred by section 13—214 of the Code of Civil Procedure.

■ Although plaintiffs' suit was brought within the five-year limitations period, defendant next argues that the equitable remedy of rescission is not available because plaintiffs failed to timely assert this claim earlier. Plaintiffs' original complaint, filed on July 7, 1981, sought damages for the various defects and on July 30, 1982, plaintiffs were granted leave to amend their complaint to seek a claim of rescission without objection by the defendant. The motion for leave to amend as well as testimony at trial indicates that the addition of this claim resulted from an opinion of plaintiffs' expert that the problems plaintiffs were experiencing were not isolated defects but were interrelated complaints pointing out latent structural defects in the walls.

In *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341, the supreme court upheld a defense of *laches* in bar of plaintiff's suit to quiet title to a mineral estate which was brought more than 18 years after plaintiff learned of his interest. The *Pyle* court noted that *laches* is defined as such delay in enforcing one's rights as would work to the disadvantage of another. The doctrine is founded not merely upon the amount of time involved but is properly invoked where there has been some change of condition or circumstances of the property or the parties, making relief inequitable. Whether the delay is sufficient to constitute *laches* depends upon the circumstance of the case and requires an examination of when the party became aware of the reasons which would support the equitable remedy. In *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 388 N.E.2d 943, for example, the court upheld an order rescinding a stock sale agreement on the basis of fraud five years after the transaction, even though the claim for rescission was not made until after the close of evidence at trial. The court there noted that the plaintiff had not become aware of the defendant's fraud or misrepresentation until the close of the evidence.

An examination of when plaintiffs became aware of the availability of the equitable remedy also requires some consideration of when a breach of contract will support an award of rescission. Among other grounds which can be used to support a claim of rescission, failure of consideration is a recognized basis for such a relief, but not every breach of contract will warrant this extraordinary remedy. In *C.G. Caster Co. v. Regan* (1980), 88 Ill. App. 3d 280, 285, 410 N.E.2d 422, 426, the court stated:

" '[A] party may terminate or rescind a contract because of substantial nonperformance or breach by the other party.' [Citation.] 'A total breach of contract is a nonperformance of duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end.' (A. Corbin, Contracts sec. 946, at 925 (1952).) Whether or not a breach is material and important is a question of degree which must be answered by weighing the consequences of the breach in light of the actual custom of persons in the performance of contracts similar to the one involved in the specific case. A. Corbin, Contracts sec. 946, at 925 (1952)."

In *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154, an implied warranty of habitability was breached by a builder-vendor where plaintiff's house was constructed with "substantial defects" requiring major amounts of work to repair. Although the house was habitable and not dangerously unsafe, the court allowed the buyers to rescind their contract and recover the value of labor and materials they supplied as well as their down payment. The *Petersen* court expressly noted that they were not deciding what the appropriate remedy would have been if the defects had not been discovered until after the deed had been delivered, but we do not interpret that case as precluding rescission where a house is discovered with substantial structural defects after the deed has passed to the buyer. The opinion did say, however, that "[t]he implied warranty arises with the execution of the contract and survives the delivery of the deed." (76 Ill. 2d 31, 41, 389 N.E.2d 1154, 1158.) In the case at bar, for example, testimony was introduced that the cost of repairing the defective conditions complained of would come close to the original price of the house.

We conclude that the trial court correctly rejected defendant's claim of *laches*. The plaintiffs testified that the cracks in the walls became progressively worse each year; they apparently did not realize the magnitude of the problems until the house was examined by a structural engineer in 1981 and 1982. The septic system was noticed

to be deficient in 1978, and when plaintiffs informed defendant he attributed the problem to excessive groundwater and suggested that plaintiffs reduce the amount of laundry for a few weeks. On April 13, 1981, plaintiffs received a complaint regarding the septic system from the Illinois Department of Public Health notifying them that they had to take immediate action to correct a sewage eruption on their property. This evidence suggests that plaintiffs were not aware of the substantial problems until shortly before they amended their complaint to seek rescission, and we find no evidence of any prejudicial change in circumstance to warrant application of *laches* to bar plaintiffs equitable remedy.

■ The evidence also suggests that the breach of the implied warranty of habitability was substantial and justified rescissionary relief. Plaintiffs' witness, John Frauenhoffer, a structural engineer, investigated the cause of the defects in the walls and he stated that they had not been secured and properly framed and that the ongoing movement of the walls would cause a softening of the structure. He stated that it was highly possible that a wall would fall out of the structure, making the home uninhabitable. Defendant did not present evidence refuting that plaintiffs experienced problems with the septic system, the water softener, the cracked floor in the storage shed, the wall/ceiling separation and the nail popping. Defendant's subcontractor and defendant both testified that the wall/ceiling separation could be cured by covering it up with moulding and they both stated that the home was built in a commercially reasonably manner. An architect also testified for defendants that the house was more than commercially acceptable.

Plaintiffs presented evidence that the septic system installed by defendant's subcontractor was inappropriate for the size of plaintiffs land and the type of soil. Plaintiffs performed percolation tests at the direction of the Illinois Department of Health which indicated that a seepage system septic system could not be used on their lot. Defendant's subcontractor who installed the system performed similar tests with substantially different results and he stated that the system was installed in a proper manner.

Upon this conflicting evidence, we will not disturb the award. We agree that not every breach of an implied warranty of habitability is sufficient for an award of rescission, but the proof here shows a substantial breach of defendant's contractual duty to construct a house reasonably fit for its intended use. *Petersen.*

■ Defendant also suggests that a fully executed contract may not be rescinded, citing *Albers v. Continental Illinois Bank & Trust*

*Co.* (1938), 296 Ill. App. 596, 17 N.E.2d 67, and 12A Ill. L. & Prac. *Contracts* sec. 374 (1983). The latter encyclopedia merely cites *Albers* for its rule. In *Albers* a suit was brought by a receiver of a defunct bank to set aside a pledge of securities which covered a deposit by the defendant with the bank. The defendant argued that a fully executed contract (pledge agreement) could not be rescinded even though the agreement was *ultra vires* of the bank. The appellate court rejected this argument and pointed out that "[t]he rule that a contract once executed may not be rescinded by either of the parties is based upon the rule of *pari delicto*. In such a case the law will aid neither party to recovery anything. But this rule does not obtain where the attempt to recover is made by a receiver not in *pari delicto*." (296 Ill. App. 596, 600-01, 17 N.E.2d 67, 69.) There is no suggestion by the defendant that plaintiffs are guilty of any conduct which would prevent them from seeking the aid of equity.

In *Hakala v. Illinois Dodge City Corp.* (1978), 64 Ill. App. 3d 114, 380 N.E.2d 1177, a fully executed real estate agreement was rescinded because of a mutual mistake of the parties concerning access to the real estate; in *Pinelli* a fully executed stock agreement was rescinded more than seven years after its execution because of fraudulent misrepresentation by the seller of the stock, and in *C.G. Caster Co.*, a fully executed employment agreement was rescinded after its execution because of a substantial breach by the employer of termination provisions of the contract which justified the employee in disregarding a restrictive covenant provided for in the agreement. We find no support for defendant's argument that a fully executed contract cannot be rescinded.

█ Defendant also claims that the trial court erred in submitting to the jury the issue of whether plaintiffs were entitled to rescind the sales agreement. Defendant suggests that the question of rescission was for the court and not the jury. We agree that there is no right to a jury trial on equitable issues (*Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 199 N.E.2d 797), but it was not beyond the court's power to submit this equitable question to the jury. Section 2—1111 of the Civil Practice Law provides that the court may in its discretion direct an issue or issues to be tried by a jury, whenever it is judged necessary in an action seeking equitable relief. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1111; *Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 406 N.E.2d 879.) Section 2—614 of the Civil Practice Law provides that legal and equitable issues may be tried together, but such a procedure is limited to cases where no jury is employed. (Ill. Rev. Stat. 1981, ch. 110, par. 2—614.) Defendant has never made this

argument in either the trial court or this court, however, and we decline to consider that section here.

Plaintiffs were entitled to seek both remedies, legal and equitable, even though they were inconsistent, unless it could be said that they had elected one remedy or the other. This doctrine of election of remedies, does not prevent a party from seeking relief on inconsistent remedies unless a party has formerly manifested an intent to seek one remedy and the defendant makes a substantial change of position in reliance upon that intention or a possibility of double recovery exists. (*Altom v. Hawes* (1978), 63 Ill. App. 3d 659, 380 N.E.2d 7.) As we have indicated in our discussion of *laches*, we find no change of position to create an estoppel here and find no abuse of discretion in submitting both the legal and equitable claim to the jury.

■ Defendant next charges that the jury instructions on rescission and elements of damage were improper because the damage instruction included improper elements of recovery and the rescission instruction did not adequately define the issues for the jury. These questions we treat together, since they point out the parties' confusion in both the nature of the relief available in this case and the proper amount of recovery. Plaintiffs' complaint sought recovery in warranty, and in tort, and yet each damage instruction was the same. The jury instructions for damages were unique and provided two options, either rescission and damages or damages. Part A provided for rescission and included damages for the fair market value of the house without defects, amounts plaintiffs paid to replace the sewage system and repair the bathroom and water conditioner, moving expenses, closing costs, percentage points, expert witness fees, and an amount to reflect the higher interest rate for financing a replacement house. Part B instructed the jury that if they did not award rescission, then plaintiffs sought damages for the reasonable expenses to make repairs for all of the defects, rent for substitute housing while repairs were being made, transportation costs, and cost for expert opinions. The trial court entered judgment upon the verdicts in the language "[j]udgment on remaining verdicts entered in favor of Plaintiffs *** in sum of $76,000 and upon such verdicts Plaintiffs granted rescission of contract."

The purpose of a rescissionary award is to disaffirm the transaction of the parties and restore them to the *status quo* as it existed prior to the execution of the contract. (*Luciani v. Bestor* (1982), 106 Ill. App. 3d 878, 436 N.E.2d 251; *Altom*.) Where rescission is awarded then, the proper measure of recovery is restitution of the consideration and other benefits received by the parties under the contract.

(*Hakala*.) We find it inconsistent to both disaffirm the transaction and yet at the same time award plaintiffs the fair market value of the home as it would have existed without defects. The proper measure of recovery should have been simply a return of the consideration and other benefits received by the parties under the contract. In *Petersen*, for example, the supreme court upheld an award of rescission of a real estate contract for a breach of an implied warranty of habitability and as a measure of restitution approved a return of plaintiffs' down payment and the value of labor and materials supplied by them in the construction of the house. We conclude that the jury instruction on damages was erroneous in including those items referred to above. All plaintiffs should have received as their measure of restitution was the return of the purchase price and the costs they incurred in correcting the defective problems with the house and septic system.

We have predicated our analysis of the rescission remedy upon the count seeking this relief for a breach of the implied warranty of habitability as this is the only theory which supports the award. In *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, the supreme court held that negligence liability was not intended to protect a purchase of a new home from economic loss caused by defects in the home, and we are aware of no authority allowing a purchaser to rescind a contract upon a theory of negligence. Thus, since we affirm the rescission award but find reversible error in the damage instructions, we remand this cause to the trial court to make findings on the appropriate amount of money required to return the parties to the *status quo ante*, including plaintiffs' purchase price, and the amounts of money plaintiffs spent in correcting the defects in the home and septic system.

■ Plaintiffs claim that the defendant has waived any claim that the jury instructions with regard to damages were erroneous because he does not argue on appeal that the verdict is excessive. (See *Chicago City Ry. Co. v. Roach* (1899), 180 Ill. 174, 54 N.E. 212; *Campbell v. Chesapeake & Ohio Ry. Co.* (1962), 36 Ill. App. 2d 276, 183 N.E.2d 736.) *Campbell* and *Roach* do indicate that errors in damages instructions will not be considered on appeal where there is no claim that the damages are excessive, but defendant here does suggest that the damages are excessive and we think that the prejudice to the defendant in including the above elements of damage as a measure of restitution is obvious.

■ We do agree with plaintiffs that the defendant has waived the argument that the jury was improperly instructed on the issue of rescission. Plaintiffs' instruction on this issue told the jury that they

could grant rescission if they found: (1) plaintiff had a right to expect to receive that for which they bargained; and (2) plaintiffs had bargained for a house reasonably fit for its intended use, not a house with defects plus damages. Defendant did not object to the wording of this instruction but merely claimed that "we don't think rescission is a remedy available to the plaintiffs in this case under the evidence." In brief, defendant merely states that "plaintiff did not adequately instruct or define the term rescission" without citation of any authority on this point. We do not believe that this objection or argument in brief is sufficient to preserve the issue for review. It is often stated that reviewing courts are entitled to have the issues clearly defined and to be cited to pertinent authorities and are not a depository in which an appellate is allowed to dump entire matters of pleadings, court actions, arguments or research upon the court. (*In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 288 N.E.2d 520.) Likewise, to preserve an objection as to an instruction one must set it forth with specificity to advise the trial court of the ground of complaint before ruling. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664.) Defendant's general objection below and his failure to cite authority in his brief for the argument made here will not suffice to preserve this issue for our consideration.

■ Finally, we note the parties have argued extensively in their briefs as to whether the proper measure of damages in this case should have been the dimunition in fair market value as a result of the breach or the cost of repairing the defects. (See *Witty v. C. Casey Homes, Inc.* (1981), 102 Ill. App. 3d 619, 430 N.E.2d 191; *Kangas v. Trust* (1982), 110 Ill. App. 3d 876, 441 N.E.2d 1271.) The cost of repair measure of damages was included in the jury instruction as an *alternative* measure in the event the jury did not recommend rescission. Since the jury recommended rescission, the trial court accepted their verdict, and we have affirmed this remedy, those questions as to what the proper measure of damages should be is moot. The only remaining question is the appropriate amount of restitution to which plaintiffs are entitled to return them to the *status quo ante*.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed in part, reversed in part and remanded for a hearing on the proper amount of restitution required.

Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion.

MILLS, P.J., and WEBBER, J., concur.