NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230120-U

NO. 4-23-0120

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 2, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MIDWEST PROPERTY MANAGEMENT LIMITED PARTNERSHIP, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Morgan County |
| v. | ) | No. 16MR80 |
| DESIGNWISE, INC., | ) | |
| Defendant-Appellant. | ) ) ) ) | Honorable Christopher E. Reif, Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The appellate court held restitution was an appropriate remedy for breach of contract. However, the trial court erred in failing to consider the value of plaintiff's retention of goods received under the contract and issues connected to the value of a service fee. The appellate court affirmed as to liability but remanded for a new trial on the issue of the appropriate amount of restitution.

¶ 2  In November 2015, plaintiff, Midwest Property Management Limited Partnership (Midwest), entered into a contract with defendant, DesignWise, Inc. (DesignWise), for design and furnishings, also known as "case goods," for a hotel. After DesignWise failed to meet delivery dates and provided case goods that did not meet Midwest's expectations, Midwest canceled the contract and filed suit.

¶ 3  In its complaint, Midwest sought a declaratory judgment that it was within its rights to cancel the contract and further sought either expectation damages or restitution in the amount it paid to DesignWise in excess of the value of the case goods and services DesignWise

provided under the contract. DesignWise filed counterclaims alleging Midwest breached the contract by failing to pay for vanity lights and vanity mirrors under the contract.

¶ 4 The trial court found in favor of Midwest and awarded restitution. DesignWise appeals, contending the award of restitution was not a valid method of recovery and the court erred in calculating the amount of restitution and finding DesignWise had not met its burden of proof on its counterclaims.

¶ 5 Although we determine restitution is a valid method of recovery, the trial court erred in failing to account for drapes retained by Midwest when it calculated the amount of the award. It also failed to fully consider the effect of a design fee on the award. Accordingly, we affirm the court's judgment as to liability but reverse and remand for a determination of the proper amount of restitution, taking into consideration (1) Midwest's use of the drapes after it canceled the contract and its failure to return them; (2) the value Midwest derived from the design fee; and (3) whether, after reconsideration of restitution for the drapes and the design fee, the amount, if any, Midwest overpaid on the contract as a whole or if Midwest underpaid on the contract.

¶ 6 I. BACKGROUND

¶ 7 In November 2015, the parties entered into a contract for DesignWise to provide case goods for the Illinois Beach Resort, a hotel operated by Midwest. Under the initial agreement, DesignWise was to provide and install furnishings and window treatments for the hotel to meet Best Western premier standards. Under two change orders, DesignWise was also to provide activity tables and guest room bedding. The contract did not contain an express deadline for provision of the case goods. However, the contract provided DesignWise was to ship the orders "within the time frame established for installation between all parties" and have a

project and construction manager specifically responsible for reporting schedules and changes on a bi-weekly basis. DesignWise later confirmed the case goods would be delivered in May 2016.

¶ 8 After Midwest paid for some of the case goods, DesignWise failed to meet the deadline, and Midwest discovered some of the products did not conform to Best Western premier standards. Midwest canceled the contract and filed a complaint against DesignWise alleging breach of contract. In its complaint, Midwest sought a declaratory judgment that it properly canceled the contract in full and had no further obligation to DesignWise. Midwest then sought damages for breach of contract and restitution for the amount it overpaid under the contract.

¶ 9 In both a motion for summary judgment and a motion to dismiss, DesignWise argued the restitution claim was improper and Midwest could not recover both damages and restitution because the remedies were inconsistent with one another. Midwest responded it was properly seeking alternate remedies. The trial court denied the motions. DesignWise also filed counterclaims alleging breach of contract and seeking payment for amounts owed by Midwest under the contract for vanity lights and vanity mirrors.

¶ 10 At trial, the parties stipulated to the costs of the case goods ordered and received, the freight charges, and the service charges. At issue on appeal are charges relating to vanity lights, vanity mirrors, drapes, and a design fee.

¶ 11 Midwest's owner, Andrew Lombardo, testified the contract related to renovations of the hotel with the goal for the property to become a Best Western premier property. To do so, the property had to meet certain standards set by Best Western. Midwest contracted with DesignWise to remodel the guest rooms, room corridors, and elevator landings. Under the contract, DesignWise was to provide in part the "[d]esign and specifications of all interiors to include (But not limited to)" furniture, fixtures, and equipment (designated in the contract as

"FF&E"). The contract then specifically listed "Guest Bathrooms," including mirrors and lighting. DesignWise was also required to provide a procurement agreement and an "Exhibit A" including all specifications and pricing. Exhibit A does not appear in the record on appeal.

¶ 12    Midwest paid a design fee of $18,000. The contract provided for a $12,000 credit "upon approval of all FF&E and [p]rocurement described in [e]xhibit A." Lombardo indicated DesignWise never credited Midwest with the design fee. David Janssen, the president of DesignWise, testified the design-fee credit would apply if the customer purchased everything through DesignWise as planned and did not remove any of the items DesignWise specified in the design. Janssen also said the credit was predicated upon being paid. The credit would have been reflected in the final statement after everything had been purchased and paid for.

¶ 13    On April 15, 2016, Lombardo executed a lighting proposal for the purchase of 92 vanity lights to be installed in the hotel's guest room bathrooms to replace the existing lighting. Lombardo testified the lights were not part of the original specifications and described them as an "add-on" to the items he wanted to purchase for the hotel. Amy Roberts, the project manager from DesignWise, testified the bathrooms were not part of the overall design project, but Lombardo later asked DesignWise to provide lighted mirrors. Forty-one vanity lights were delivered. On May 16, 2016, DesignWise issued an invoice to Midwest in the amount of $10,686.27 for the 41 vanity lights. Midwest did not pay the invoice. Lombardo testified Midwest did not pay for any of the vanity lights that were shipped.

¶ 14    On April 27, 2016, Lombardo executed a vanity mirror proposal for the purchase of 37 vanity mirrors for a total price of $5855.86. Midwest paid a deposit of $2927.93 for the mirrors. DesignWise did not deliver the mirrors, and Midwest did not pay the remaining balance.

¶ 15        During trial, DesignWise presented a document purporting to show a summary of losses that included the vanity lights and mirrors included with figures involving other case goods under the contract.  However, in relation to that document, Janssen referred to items in the exhibit as separate agreements or proposals.  In correspondence, the parties generally referred to a single "project" when discussing the issues.  The vanity lights and mirrors were not included in a specification manual showing case goods to be provided for the project.

¶ 16        On May 16, 2016, DesignWise delivered 40 sets of drapes, which Lombardo alleged did not meet Best Western premier standards because they lacked cornices.  Roberts also admitted the drapes were too short, stating they were ordered incorrectly.  Midwest discovered the problem in early June and informed DesignWise of the defects in the drapes.

¶ 17        Lombardo testified the case goods were to be delivered by May 2016, and Roberts testified delivery was scheduled for the end of May 2016.  In e-mail correspondence between Lombardo and Roberts, Lombardo expressed concern about the delivery date.  Because the hotel was sold out during summer months, it was important to get the items installed in May 2016.  After the case goods could not be timely provided, DesignWise provided temporary case goods.

¶ 18        On May 26, 2016, Lombardo wrote to Roberts to inform her Midwest was suspending the case-goods portion of the contract.  Then, on June 3, 2016, Lombardo wrote to Roberts canceling the contract.  Lombardo noted the nonconforming drapes and the failure to timely provide the case goods and referred to the matter as a "substantial and material breach" of the contract.  He asked DesignWise to cure the problem with the drapes by August 10, 2016, and promptly deliver the missing vanity lamps, and he noted arrangements would need to be made to remove the temporary case goods.  On June 20, 2016, Lombardo sent an e-mail to Janssen addressing the issues and stating Midwest had paid DesignWise $70,352.19 in excess of the

value of the products it had received. Lombardo met with Janssen, who said DesignWise would fix the drapes, but then said it would not provide cornices. Lombardo testified the discussion "broke down" after that.

¶ 19 On June 24, 2016, Lombardo wrote to Janssen stating Midwest had filed suit against DesignWise but would be inclined to stay the proceedings if DesignWise provided a satisfactory plan to remedy the problems. DesignWise then ceased communication with Midwest. Midwest contracted with a different design company to finish the project and purchased new drapes from another company. The defective drapes remained in the guest rooms until the replacement drapes arrived in spring 2017. Midwest did not return the drapes to DesignWise.

¶ 20 Lombardo testified about an account recap prepared by Midwest showing total payments from Midwest to DesignWise in the amount of $549,374.63, which included the $18,000 design fee. The sheet calculated the missing case goods to total $479,022.44. That figure included $2927.93 for the vanity mirrors, 52 remaining vanity lights valued at $13,553.32, and $126,289.81 for the drapes. Subtracting $479,022.44 from $549,374.63, Midwest calculated the amount it overpaid DesignWise was $70,352.19.

¶ 21 Both parties submitted extensive written closing arguments to the trial court. In its closing argument, Midwest acknowledged the court could award only expectation damages or restitution and not both. Midwest then wrote it was more appropriate and efficient for the court to award restitution damages, but it was including an argument as to expectation damages should the court determine that was the more appropriate remedy. In calculating the restitution amount, Midwest provided a spreadsheet based on the account recap Lombardo testified about at trial but noted the spreadsheet omitted four activity tables constituting case goods that had not been

delivered. It also mistakenly accounted for 52 missing vanity lights instead of 51 missing vanity lights. After providing new calculations based on those errors, Midwest calculated it received goods and services valued at $478,120.87 and had paid $549,374.63. Thus, Midwest argued it was entitled to $71,253.76 in restitution.

¶ 22　　　　In a written order, the trial court found a valid contract existed and DesignWise breached the contract. The court found the delay substantially impaired the value of the contract, and Midwest had a valid reason to cancel the contract. Thus, the court granted Midwest's request for a declaratory judgment. Without specifically discussing the drapes and design fee, the court awarded restitution in the amount of $71,253.76. Based on its findings in favor of Midwest, the court dismissed DesignWise's counterclaims.

¶ 23　　　　This appeal followed.

¶ 24　　　　　　　　　　　II. ANALYSIS

¶ 25　　　　On appeal, DesignWise contends (1) the trial court applied an incorrect or invalid measure of damages, (2) Midwest failed to adequately prove its damages regarding the vanity mirrors and vanity lights, (3) Midwest could not recover restitution for the drapes when it did not return them, (4) Midwest and the court failed to deduct the design credit from the amount it claimed in overpayment, and (5) the court erred in dismissing the counterclaims.

¶ 26　　　　　　　　　　　A. Restitution

¶ 27　　　　DesignWise first contends the trial court applied the wrong measure of damages, arguing restitution is not a cognizable measure of damages for breach of contract in Illinois. DesignWise further argues, even if restitution is a recognized method of recovery, Midwest could not utilize it because it required a total breach of the contract. According to DesignWise, the breach was partial, thus precluding an award of restitution.

¶ 28    To sustain a cause of action for breach of contract, whether written or oral, a plaintiff must plead and prove the following four elements: (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages or injury to the plaintiff caused by the breach. See *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28; *Lindy Lu LLC v. Illinois Central R.R. Co.*, 2013 IL App (3d) 120337, ¶ 21, 984 N.E. 2d 1171; *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 68, 990 N.E. 2d 738. Here, DesignWise does not dispute the trial court's findings concerning the existence of a contract. It also generally does not dispute the findings it breached the contract except as related to the vanity lights and mirrors as asserted in its counterclaims.

¶ 29    We first disagree with DesignWise that an award of restitution is not a cognizable remedy for breach of contract in Illinois. When a breach of a contract has been proven, some of the remedies available to the trial court include contract damages, specific performance, and awarding restitution to prevent unjust enrichment. See *MC Baldwin Financial Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 14, 845 N.E.2d 22, 30 (2006); Restatement (Second) of Contracts §§ 344-45 (1981). Both this court and the First District have recognized restitution as an appropriate remedy. *MC Baldwin*, 364 Ill. App. 3d at 14, 845 N.E.2d at 30; *Finke v. Woodward*, 122 Ill. App. 3d 911, 919, 462 N.E.2d 13, 19 (1984).

¶ 30    "A party injured by another's breach or repudiation of a contract usually seeks recovery in the form of damages based on his 'expectation interest,' which involves obtaining the 'benefit of the bargain,' or his 'reliance interest,' which involves reimbursement for loss caused by reliance on a contract." *MC Baldwin*, 364 Ill. App. 3d at 14, 845 N.E.2d at 30 (quoting Restatement (Second) of Contracts § 344). However, when a defendant has committed

a total breach or a repudiation of a contract, a plaintiff may alternatively seek restitution. *MC Baldwin*, 364 Ill. App. 3d at 14, 845 N.E.2d at 30 (citing Restatement (Second) of Contracts § 373).

¶ 31 The purpose of such a rescissionary award is to disaffirm the contract and restore the parties to the status quo as it existed before the execution of the contract. *Finke*, 122 Ill. App. 3d at 919, 462 N.E.2d at 19. "A 'restitution interest' is a party's 'interest in having restored to him any benefit that he has conferred on the other party.' " *MC Baldwin*, 364 Ill. App. 3d at 14, 845 N.E.2d at 30 (quoting Restatement (Second) of Contracts § 344(c), at 103). "An award of restitution is designed to prevent unjust enrichment by disgorging the benefit conferred to the defendant by the plaintiff." *MC Baldwin*, 364 Ill. App. 3d at 14, 845 N.E.2d at 30 (citing Restatement (Second) of Contracts § 344, Comment a). "Restitution can be measured by either the 'reasonable value' of the benefit received by the defendant, or by the 'extent to which the [defendant's] property has been increased in value or his other interests advanced.' " *MC Baldwin*, 364 Ill. App. 3d at 14, 845 N.E.2d at 30 (quoting Restatement (Second) of Contracts § 371, at 202). "However, a plaintiff seeking restitution may have his award reduced by the amount the defendant's part performance prior to breach or repudiation constituted an advantage to the plaintiff." *MC Baldwin*, 364 Ill. App. 3d at 14-15, 845 N.E.2d at 30. Thus, restitution to a plaintiff has consisted of all monies paid to a defendant on a contract less any benefit the defendant received. *Cotter v. Parrish*, 166 Ill. App. 3d 836, 842, 520 N.E.2d 1172, 1176 (1988); see *Finke*, 122 Ill. App. 3d at 919, 462 N.E.2d at 19 (stating where recission is awarded, the proper measure of recovery is restitution of the consideration and other benefits received by the parties under the contract).

¶ 32    A party is also entitled to seek both remedies based on an expectation interest and restitution, even if they are inconsistent. See *Finke*, 122 Ill. App. 3d at 919, 462 N.E.2d at 18. "This doctrine of election of remedies, does not prevent a party from seeking relief on inconsistent remedies unless a party has formerly manifested an intent to seek one remedy and the defendant makes a substantial change of position in reliance upon the intention or a possibility of double recovery exists." *Finke*, 122 Ill. App. 3d at 919, 462 N.E.2d at 18-19.

¶ 33    Here, Midwest asserted both damages based on its expectation interest and restitution in the alternative. Both are a recognized measure of recovery, and Midwest was entitled to seek either remedy in the alternative to the other. There was no double recovery, as the trial court awarded only restitution.

¶ 34    DesignWise argues, even if restitution could be awarded, it was improper here because the breach of the contract was not total. According to DesignWise, because Midwest received some goods under the contract, the breach was partial. However, Midwest canceled the contract in full, resulting in a total repudiation of the contract. This court recently discussed the importance of this distinction in *Dustman v. Advocate Aurora Health, Inc.*, 2021 IL App (4th) 210157, ¶¶ 37-38, 192 N.E.3d 47. There, this court noted "[a] material, uncured breach of contract brings the injured party to a fork in the path." *Dustman*, 2021 IL App (4th) 210157, ¶ 37. One direction is the termination of the contract, while the other is the continuation of the contract. *Dustman*, 2021 IL App (4th) 210157, ¶ 37. Thus, this court further stated:

> " 'If the injured party chooses to terminate the contract, it is said to treat the breach as *total*. The injured party's claim for damages for total breach takes the place of its remaining substantive rights under the contract. Damages are calculated on the assumption that neither party will render any further

performance. They therefore compensate the injured party for the loss that it will suffer as a result of being deprived of the balance of the other party's performance, minus the amount of any saving that resulted from the injured party not having to render its own performance.

If the injured party does not terminate the contract, either because that party has no right to or does not choose to, the injured party is said to treat the breach as *partial*. The injured party has a claim for damages for partial breach, in addition to its remaining substantive rights under the contract. Damages are calculated on the assumption that both parties will continue to perform in spite of the breach. They therefore compensate the injured party only for the loss it suffered as the result of the delay or other defect in performance that constituted the breach, not for the loss of the balance of the return performance. Since the injured party is not relieved from performing, there is no saving to it to be subtracted.' " (Emphases in original.) *Dustman*, 2021 IL App (4th) 210157, ¶ 38 (quoting Farnsworth on Contracts § 8.15, at 437-38 (2d ed. 1998)).

¶ 35 Here, Midwest chose to cancel the contract. Thus, it chose to treat the matter as a total breach of contract and is entitled to seek restitution as a remedy. See Restatement (Second) of Contracts § 373 (1981) ("[O]n a breach by non-performance that gives rise to a claim for damages for total breach or on a repudiation, the injured party is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance.").

¶ 36 B. Proof of the Restitution Amount

¶ 37    DesignWise next argues Midwest failed to sufficiently prove its overpayment. In particular, DesignWise challenges the award of restitution for the drapes, vanity lights, vanity mirrors, and design fee.

¶ 38    A trial court's findings with respect to restitution will not be disturbed unless they are against the manifest weight of the evidence. See *Board of Managers of Hidden Lake Townhome Owners Ass'n v. Green Trails Improvement Ass'n*, 404 Ill. App. 3d 184, 194 (2010). "A judgment is against the manifest weight of the evidence only if the opposite conclusion is apparent or when the trial court's findings appear to be arbitrary, unreasonable, or not based on the evidence." *Wiczer v. Wojciak*, 2015 IL App (1st) 123753, ¶ 33, 30 N.E.3d 670.

¶ 39                                1. *The Drapes*

¶ 40    DesignWise first argues Midwest cannot recover restitution for the drapes because it accepted the drapes, used them, and never returned them. We agree the award of the full amount paid for the drapes was in error and remand for a determination of the appropriate amount of restitution in light of Midwest's use of the drapes and failure to return them.

¶ 41    As previously noted, a plaintiff seeking restitution may have the award reduced by the amount the defendant's part performance before breach or repudiation constituted an advantage to the plaintiff. *MC Baldwin*, 364 Ill. App. 3d at 14, 845 N.E.2d at 30. "The purpose of rescission is to disaffirm the transaction of the parties and restore them to the status quo as it existed prior to the execution of the contract." *Cotter*, 166 Ill. App. 3d 836, 842, 520 N.E.2d 1172, 1176 (1988). "The proper measure of recovery is restitution of the consideration and other benefits received by the parties under the contract." *Cotter*, 166 Ill. App. 3d at 842, 520 N.E.2d at 1176. But, to restore the parties to the status quo, plaintiffs are entitled only to be reimbursed the amount they paid on their contract minus any benefit they received. *Cotter*, 166 Ill. App. 3d

at 842, 520 N.E.2d at 1176. Where restoration of the other party to the status quo is impossible, the party canceling the contract generally must reimburse the other party for the value of the benefit it received under the contract. See *23-25 Building Partnership v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 757, 886 N.E.2d 1156, 1163 (2008).

¶ 42   The restatement addresses the issue as follows:

"(1) Except as stated in Subsection (2), a party will not be granted restitution unless

(a) he returns or offers to return, conditional on restitution, any interest in property that he has received in exchange in substantially as good condition as when it was received by him, or

(b) the court can assure such return in connection with the relief granted.

(2) The requirement stated in Subsection (1) does not apply to property

(a) that was worthless when received or that has been destroyed or lost by the other party or as a result of its own defects,

(b) that either could not from the time of receipt have been returned or has been used or disposed of without knowledge of the grounds for restitution if justice requires that compensation be accepted in its place and the payment of such compensation can be assured, or

(c) as to which the contract apportions the price if that part of the price is not included in the claim for restitution." Restatement (Second) of Contracts § 384 (1981).

¶ 43   Here, the evidence showed Midwest kept and used the defective drapes from when it canceled the contract in June 2016 until spring 2017. It then did not return the drapes.

Because Midwest was entitled to be reimbursed only for the amount it paid on the contract minus any benefit it received, the trial court's award of restitution for the full value of the drapes without any consideration of the value of the benefit of the drapes to Midwest was against the manifest weight of the evidence. As noted, where restoration of the other party to the status quo is impossible, the party canceling the contract generally must reimburse the other party for the value of the benefit it received under the contract. *23-25 Building Partnership*, 381 Ill. App. 3d at 757, 886 N.E.2d at 1163. Under the restatement, the court could also possibly find exceptions to the requirement that Midwest return the drapes, or order return of the drapes, but the court did not address those factors. Thus, factual questions remain as to the applicability of any exceptions or the value of the benefit Midwest received from its use of the drapes and its failure to return them. Accordingly, we reverse and remand for those determinations.

¶ 44                                   2. *Design Credit*

¶ 45           DesignWise next contends Midwest and the trial court failed to account for the design-fee credit. DesignWise argues Midwest should not have sought the full design fee in its calculations and asks that $12,000 be subtracted from the $18,000 design fee Midwest included in its overpayment amount. Midwest responds that, because DesignWise breached the contract, it was not against the manifest weight of the evidence to include the full $18,000 design fee in the overpayment calculations.

¶ 46           Unlike compensatory damages, a restitution award is not measured by the plaintiff's loss, but by the defendant's unjust gain. See *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 257, 807 N.E.2d 439, 445 (2004). Here, it is undisputed DesignWise breached the contract and the trial court found Midwest properly canceled it. The breach made it impossible for Midwest to purchase all of the case goods in order to claim credit. Thus,

DesignWise's actions resulted in it retaining more than it presumably would have had its breach of the contract not occurred. Put another way, DesignWise prevented application of the credit, resulting in its own unjust gain. As a result, it was not against the manifest weight of the evidence for the court to conclude DesignWise unjustly benefited by the amount of the credit in the amount of $12,000. However, it is unclear what value Midwest derived from the remainder of the design fee, and the court did not address the matter. If Midwest derived any benefit from that fee, it would not be entitled to restitution for that amount. As with the restitution award for the drapes, we reverse and remand for a determination of the proper amount of the award.

¶ 47                              3. *Vanity Lights, Mirrors, and Counterclaims*

¶ 48          Finally, DesignWise contends the trial court failed to account for the 41 vanity lights Midwest received, which had a value of $10,686.27. DesignWise also contends Midwest did not account for its receipt of 37 vanity mirrors that it did not pay for. In connection with those arguments, DesignWise argues the court erred in dismissing its counterclaims alleging the lights and the mirrors were separate contracts breached by Midwest.

¶ 49          A trial court's interpretation of a contract is generally reviewed *de novo*, but factual findings informing the interpretation of the contract are given deference on review and are reversed only where the factual findings are against the manifest weight of the evidence. *Wiczer*, 2015 IL App (1st) 123753, ¶ 33, 30 N.E.3d 670. "The primary objective in construing a contract is to give effect to the intent of the parties." *Dearborn Maple Venture, LLC v. SCI Illinois Services, Inc.*, 2012 IL App (1st) 103513, ¶ 31, 968 N.E.2d 1222, *as modified on denial of reh'g* (May 29, 2012). "The general rule is that in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with

reference to one another because they are, in the eyes of the law, one contract." *Tepfer v. Deerfield Savings & Loan Ass'n*, 118 Ill. App. 3d 77, 80, 454 N.E.2d 676, 679 (1983). "This is true whether or not the instruments were executed simultaneously; if executed at different times as parts of the same transaction they will be construed together." *Tepfer*, 118 Ill. App. 3d at 80, 454 N.E.2d at 679.

¶ 50        " 'Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect ***.' " *Tepfer*, 118 Ill. App. 3d at 80, 454 N.E.2d at 679 (quoting 17 Am. Jur. 2d Contracts § 264.) " '[C]ontemporaneous means so proximate in time as to grow out of, elucidate and explain the quality and character of the transaction, or an occurrence within such time as would reasonably make it a part of the transaction.' " *Tepfer*, 118 Ill. App. 3d at 80-81, 454 N.E.2d at 679 (quoting *Elsberry Equipment Co. v. Short*, 63 Ill. App. 2d 336, 346-47, 211 N.E.2d 463, 468 (1965)).

¶ 51        Here, the trial court's determination there was a single contract was reasonable. We recognize the vanity light and mirror proposals were separately signed and dated. Also, Roberts testified the bathrooms were not part of the original contract, the vanity lights and mirrors were not ordered via "change orders," and they were not listed in a specification manual provided to DesignWise by Midwest. However, the original contract generally contemplated the provision of case goods for the resort's guest room renovations, and it then specifically listed mirrors and lighting for the guest bathrooms. Lombardo testified the orders for the lights and mirrors were an "add-on" to the original contract and the parties at times referred to them as being included in the project as a whole. Overall, the lighting and mirror proposals were contemporaneous with the original contract and reasonably were part of the original transaction.

As such, the opposite conclusion reached by the court is not apparent, nor was its determination arbitrary, unreasonable, or not based on the evidence. Accordingly, the court's conclusion was not against the manifest weight of the evidence.

¶ 52          As to the amount of restitution, in its closing argument, Midwest noted it was invoiced $23,978.95 for 92 vanity lights. The value of the lights received was $13,292.68. The difference between those amounts was $10,686.27, which accounts for the amount of the lights Midwest did not receive. Regarding the vanity mirrors, Midwest noted in its closing arguments and spreadsheet that it was invoiced $5855.86 for the mirrors and paid $2927.93. Thus, Midwest accounted for the amounts invoiced and paid.

¶ 53          DesignWise argues, because Midwest did not pay the invoices either in full or in part, it cannot claim restitution for overpayment for the vanity lights and mirrors. However, Midwest was seeking restitution of its overpayment on the contract as a whole. To the extent Midwest overpaid in some instances and underpaid in others regarding specific goods, it ultimately was entitled to restitution of the overall amount DesignWise unjustly gained from its breach of the contract. Thus, where Midwest properly accounted for items received and amounts it paid or failed to pay, the trial court's determination of the value associated with the vanity lights and mirrors was not against the manifest weight of the evidence. However, on remand, it is possible the court could determine Midwest actually underpaid on the contract as a whole. If so, it could then revisit the amount of damages sought by DesignWise under its counterclaims.

¶ 54                                    III. CONCLUSION

¶ 55          For the reasons stated, the trial court properly determined restitution was an appropriate remedy. However, the court erred in failing to consider the value of Midwest's retention of the drapes and issues connected to the value of the design fee. Accordingly, we

- 17 -

affirm the court's judgment as to liability, but reverse and remand for a determination of the proper amount of restitution, taking into consideration (1) Midwest's use of the drapes after it canceled the contract and its failure to return them, (2) the value Midwest derived from the design fee, and (3) whether, after reconsideration of restitution for the drapes and the design fee, the amount, if any, Midwest overpaid on the contract as a whole or if Midwest underpaid on the contract.  See generally *Daniggelis v. Pivan*, 159 Ill. App. 3d 1097, 1104, 513 N.E.2d 92, 96 (1987) (reversing and remanding for a new trial only on the issue of damages).

¶ 56        Affirmed in part and reversed in part; cause remanded.